C. Edward Isert v. Commissioner.
Isert v. Commissioner
Docket No. 3739-69 SC.
United States Tax Court
T.C. Memo 1971-150; 1971 Tax Ct. Memo LEXIS 182; 30 T.C.M. (CCH) 653; T.C.M. (RIA) 71150; June 23, 1971, Filed *182 Held: On the facts submitted, petitioner is not entitled to a casualty or theft loss within the meaning of section 165, I.R.C. 1954. C. Edward Isert, pro se, 2442 Devine St., Columbus, S. C.Richard G. Holloway, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in petitioner's income tax for the year 1967 in the amount of $280.20. Petitioner has conceded that he should not be allowed a deduction for employee business expenses. The issues remaining for decision are (1) whether petitioner sustained a casualty loss within the meaning of section 165 of the Internal Revenue Code of 1954, [1] in 1967 in the amount of $987, or in any amount, as a result of the alleged "forgery" of his signature to a Federal income tax refund *183 check issued jointly to him and his former wife, where the wife received all the proceeds of the refund check; (2) whether petitioner sustained a casualty loss in 1967 in the amount of $365, or in any amount, by the alleged appropriation by his former wife of proceeds on liquidation of a joint investment account. Findings of Fact Some of the facts have been stipulated and the stipulation of facts along with the exhibits attached thereto are incorporated herein by reference. Petitioner was a resident of Kentucky at the time the petition herein was filed. For the year 1967 petitioner filed his individual income tax return with the district director, Louisville, Kentucky. Petitioner and his former wife, Jane, were married in June 1965. They lived together at 2008 Goldsmith Lane, Louisville, Kentucky. They separated in February 1966, and remained so until the time of their divorce in April 1966. The divorce proceedings were begun by Jane immediately after the separation. It was uncontested; there was no property settlement or division in connection with the divorce; *184 there were no children involved; petitioner did not pay alimony or support as a result of the divorce. Petitioner's divorce from Jane was final on April 20, 1966. Jane continued to live at the 2008 Goldsmith address after the divorce. During the period of their marriage Jane operated a used car sales business, doing business as Jane's Auto Mart. Petitioner 654 did not participate in the business in any way other than to offer suggestions. Petitioner was a salaried employee of G.A.C. Transworld Acceptance (GAC) and his salary was subject to withholding. During 1965, GAC withheld $976.50 against petitioner's anticipated Federal income tax liability for that year. There was no amount withheld against or estimated payments on, any anticipated Federal income tax liability of Jane's for 1965. For the taxable year ending December 31, 1965, petitioner and Jane filed a joint Federal income tax return. Petitioner had been advised by Jane that, because of losses suffered in her business, a refund would be due on this return of approximately one thousand dollars. Jane assumed responsibility for preparation and filing of the return and paid an accountant for its preparation. Petitioner *185 was aware of this fact. His only participation in preparing the return was to furnish the withholding statement provided him by his employer, which he did by delivering it to her personally at her apartment. At that time he advised her that she could use the resulting refund against the losses she had suffered in her business. An Application for Extension of Time to File (Form 2688) with respect to the 1965 joint return was filed with the district director's office. Petitioner was aware of this and assumed that the application would be signed in his name, although he did not specifically authorize his signature to the extension. Jane signed petitioner's name, as well as her own, to the application. She also signed his name to the return when it was filed. Petitioner did not object to his signature being placed on the 1965 return by Jane; he assumed someone would sign the return for him. The 1965 return reflects the address from which it was filed as 2008 Goldsmith Lane, Louisville, Kentucky, and reflected a claim for refund of tax in the amount of $976.50, which is equal to the amount of income tax withheld against petitioner's salary from GAC. The return was filed with the district *186 director of internal revenue, Louisville, Kentucky, on June 21, 1966. On July 21, 1966, a Federal income tax refund check was issued to petitioner and Jane in the amount of $991.15. [2] Jane received the check at the 2008 Goldsmith Lane address. She endorsed the refund check in both her name and the name of petitioner, deposited it to her personal account and used the proceeds to pay bills. She attempted, without success, to contact petitioner at the time she received the check, to advise him that it had been received. In August, 1966, petitioner contacted Jane to determine what had happened to the refund check. She advised him that she had received the refund check, put it in the bank and used the proceeds. Petitioner made no demands for any or all of the proceeds of the refund check at this time. Sometime thereafter in 1966, petitioner discussed his interest in the refund check with a representative of the bank that had cashed the check and with an attorney who was employed by GAC. In November 1966, a representative of the bank contacted Jane to determine *187 if she had endorsed the check; she said she had. She was also contacted by the attorney mentioned above, who purported to be representing petitioner in an effort to recover half of the refund check and petitioner's interest in the mutual fund investment, discussed below. In December 1966, petitioner filed a "Claim Against the United States for the proceeds of a Government Check or Checks." Briefly summarized, petitioner claimed that he was the payee of the check, that he never received it; that the endorsement on the check was not his; that he had not authorized anyone to endorse his signature on the check; that his former wife endorsed the check and received the proceeds; that she refused to make reimbursement, and that he needed the money. After both petitioner and Jane were interviewed by the Secret Service in connection with the above claim and all the facts as set forth above were investigated, a letter was sent to petitioner in June 1967, wherein his claim was disallowed. This letter set out as the basic reason for disallowing petitioner's claim that the Treassury Department could not agree that petitioner's forgery charge was free from doubt and valid in all respects. At *188 the time of his marriage to Jane, petitioner maintained a bank account in Louisville, which was converted to a joint account when he and Jane were married. Both 655 he and Jane made deposits to this account during their marriage, although Jane stopped making deposits in the joint bank account when she began losing money in her business. Both Jane and petitioner drew checks against this account, but Jane only occasionally. At about the time of her marriage to petitioner, Jane made a $500 deposit to the joint bank account. Prior to her marriage to petitioner, Jane had been negotiating to purchase shares in Investors Diversified Fund, a mutual stock fund. At the time of their marriage, Jane and petitioner discussed this mutual fund and decided to make an investment therein. Jane made the initial investment in the fund of $300 on June 26, 1965. Thereafter, petitioner made monthly payments to the fund in the amount of $58, which was the amount he was receiving each month as a disability penson. These payments were made by depositing the check to their joint account and the bank was given instructions to purchase additional shares in the mutual stock fund in the amount of $58 each *189 month. The mutual stock fund was in the joint name of petitioner and Jane. Prior to their separation in February 1966, Jane and petitioner discussed termination of the mutual fund investment. Jane advised petitioner, during their initial discussion as to terminating the mutual fund, that she wanted her investment back, which at that time she considered to be her original $300. After examining the joint bank account, however, and discovering that almost all the money deposited therein was gone, Jane decided that all of the investment in the mutual fund belonged to her. The mutual fund was terminated on or about February 24, 1966, when a check, payable jointly to petitioner and Jane, for the balance in the account of $660, was issued. Petitioner received the check at his office in Louisville, endorsed it in his name and took it to Jane at her apartment. Petitioner gave the check to Jane with instruction to purchase a case of whiskey for him out of the proceeds. Jane purchased the whiskey for petitioner, for approximately $53, which he later picked up at her apartment. She deposited the proceeds of the check in her personal account and applied the funds to her business expenses. No *190 portion of the proceeds of the check was given to petitioner by Jane, other than the case of whiskey. In April 1966, at about the time of the divorce, petitioner asked Jane about the proceeds of the mutual fund investment check. He was told by Jane that she had spent it on her business expenses and there was no money left for him. Petitioner made no other demands on Jane for the proceeds of the mutual fund investment check. On his income tax return for the taxable year ended December 31, 1967, petitioner claimed a deduction for "losses" in the amount of $1,352, reported as follows: "LOSSES Forged check, could not collect by Atty $ 987.00 Misappropriated Cash by Third Party 365.00 1352.00" In his statutory notice of deficiency dated May 8, 1969, respondent disallowed the claimed deduction as reported on petitioner's return for 1967, with the following statement: (b) and (c) It is determined that the two casualty losses, one claimed in the amount of $987.00 for a forged check and the other claimed in the amount of $365.00 for misappropriated cash by third party, are not allowable because it has not been established that the alleged losses resulted from casualties within *191 the meaning of Section 165 of the Internal Revenue Code and, in any event, it has not been established that any deductible loss was sustained during the taxable year. Opinion The issues involved concern whether petitioner (1) sustained a casualty or theft loss within the meaning of section 165 in 1967 in the amount of $987, or in any amount, as a result of the alleged "forgery" of his signature to a Federal income tax refund check issued jointly to him and his former wife, where the wife received all the proceeds of the refund check; (2) sustained a casualty loss in 1967 in the amount of $365, or in any amount, by the alleged appropriation by his former wife of the proceeds on liquidation of a joint investment account. Resolution of these issues is controlled by section 165 and the Regulations thereunder. Section 165, in pertinent part, provides as follows: SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * 656 (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall *192 be limited to - * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * * Section 1.165-8(d) of the Income Tax Regulations defines theft as including, but not necessarily limited to larceny, embezzlement, and robbery. Theft, for the purposes of section 165, is a word of broad connotation, intended to cover any criminal appropriation of another's property to the use of the taker, "particularly including theft by swindling, false pretenses, and any other form of guile." Edwards v. Bromberg, 232 F. 2d 107 (C.A. 5, 1956). We agree with respondent that petitioner has not demonstrated that a theft occurred in either instance and thus, he is not entitled to either of the deductions claimed. The question of whether a loss arose from theft is an issue to be determined under applicable state law defining the offense of theft. Grover Tyler, 13 T.C. 186 (1949); Paul C.F. Vietzke, 37 T.C. 504 (1961). *193 Petitioner has alleged that Jane "forged" his endorsement on the refund check and thus a "theft" occurred. Forging or counterfeiting an endorsement on a check is an act described as forgery, punishable by imprisonment under Kentucky law. Kentucky Revised Statutes § 434.130. The lack of intent to defraud is a defense to the charge of forgery and the authority to sign documents may be inferred from failure to repudiate previous ungranted use of the name of the same person on obligations such as checks. Smith v. Commonwealth, 282 SW 2d 618 (Ky. 1955). If a person has reasonable grounds to believe, and does believe, that he is authorized to sign the name of another to a written instrument, and does sign it without fraudulent design, he does not commit forgery. Shelton v. Commonwealth, 229 Ky 60, 16 SW 2d 498 (1929). In the present case Jane prepared and filed the return which resulted in the refund check. Petitioner's only assistance in the preparation of the return was to furnish his withholding statement (Form W-2). When he gave this to Jane, he expressly indicated to her that she could use the refund resulting from the return *194 to offset her business losses. Jane signed petitioner's name to an application for extension of time within which to file the return and to the return itself. Petitioner testified that he was aware that an application for extension had been filed and he assumed someone would sign his name to it and that he did not object to his name being signed by someone to the return itself. Based upon these circumstances, Jane had reason to believe that she was authorized to sign petitioner's name to the refund check and under Kentucky law, was not guilty of forgery. Smith v. Commonwealth, supra; Shelton v. Commonwealth, supra. Accordingly, we sustain respondent's determination with respect to this issue. In regard to the alleged misappropriation of the proceeds of the mutual fund investment, petitioner and Jane decided to terminate the investment while they were still married. Petitioner received the check for the balance of the mutual fund account, endorsed it and turned it over to Jane, his only request being that she purchase him a case of whiskey from the proceeds. She did so and used the balance to pay the expenses of her business. We think it clear under these *195 circumstances that Jane was not guilty of larceny or theft from petitioner. See also Maloney v. Commonwealth, 264 Ky 783, 95 SW 2d 578 (1936); Stark v. Commonwealth, 295 SW 2d 337 (Ky. 1956), which hold that joint owners, co-owners or partners who take property from their opposites in ownership are not guilty of larceny under Kentucky law. Accordingly, respondent's determination on this issue is sustained. In view of our holding that no theft occurred, we need not consider respondent's suggestion that the losses, if any, occurred in 1966 when petitioner discovered and was aware of the alleged forgery and misappropriation. Decision will be entered for the respondent. 657 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The reason for the difference in the amounts of the refund check and the amount claimed on the return is not clear.↩