618

David O. SMITH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Sept. 30, 1955.

Robert W. Zollinger, Louisville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STEWART, Chief Justice.

Appellant, David O. Smith, was convicted of the crime of uttering a forged check, an offense·denounced by KRS 434.-130, and sentenced to· serve two years in the penitentiary. Four grounds are urged for reversal, but we have concluded the evidence failed to make out a case of forgery within the meaning of the law, and we shall therefore confine our discussion to this issue.

On December 28, 1953, Smith presented a check for $10, drawn on the West Point Bank in West Point, to one John Kunnecke, at Mauldraugh in Meade County, and requested him to cash it. It was made payable to Smith and was purportedly signed by Beulah E. Keith as drawer. Smith represented to Kunnecke that the check was genuine and, after the former's endorsement, it was cashed. Later, it was returned from the bank with a ticket attached, reading "signature incorrect."

A few days later, Mrs. Keith, who is the mother of Smith, went to the office of the Meade county attorney and obtained a warrant for her son and one for Donald Thomas for damaging certain personal property in her home at a New Year's Eve party during her absence. It developed from the testimony of the county attorney and the county judge, both of whom appeared as witnesses for the Commonwealth, that, in addition to signing an affidavit charging her son with unlawfully damaging her furniture and household effects, she accused him in the same affidavit of having forged her name to and. put in circulation the ten-dollar check. Upon the basis of this affidavit the criminal proceeding 'under consideration was instituted in the Meade quarterly court, with the result that Smith was later indicted.

Mrs. Keith testified in circuit court that she thought she was securing warrants for her son and Donald Thomas solely for their

misconduct in "tearing up the house." She contended she never at any time asked for a warrant to issue against her son on the alleged forgery charge, although she admitted she did tell the county attorney about the check transaction. It thus appears that the evidence was in conflict as to whether Mrs. Keith requested or was conscious of setting in motion charges against her son for uttering a forged check.

After stating she did not affix her name to the check in controversy, Mrs. Keith was asked this question on cross-examination: "Did you ever at any time authorize him (Smith) to sign your name to this check?" Her answer was: "He knew it was all right any time he wanted to write one, I always made them good." Then, farther on, she was asked: "Had the bank or Mr. Kunnecke brought you this check would you have paid the $10.00?" To this question there was an objection, but before the court ruled and sustained the objection she answered: "I sure would." The inquiry was a proper one and the answer should stand as competent evidence.

Smith neither testified nor introduced any evidence in his behalf. At the conclusion of the Commonwealth's testimony, he moved the lower court to find him not guilty. The motion was overruled.

Forgery has been defined as "the false making or material alteration, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." See 23 Am.Jur., Forgery, sec. 2, p. 676. As is apparent, the intent to defraud is an essential ingredient of the offense, and the lack of this element may be interposed as a bar in a prosecution alleging the commission of the crime. For example, if a person has reasonable grounds to believe, and does believe, that he is authorized to sign the name of another to a written instrument, and does sign it without any fraudulent design, he does not commit an act of forgery. Such authority to sign documents may be inferred from a failure to repudiate previous, ungranted use of the name of the same person on such obligations as checks, notes and the like. See Roberson's Kentucky Criminal Law (2d Ed.) p. 972.

Smith's mother had established the practice of allowing him to execute checks in her name and we believe the case of Shelton v. Commonwealth, 229 Ky. 60, 16 S.W. 2d 498 controls here. There it had been the custom for Shelton, his father and his two brothers, when borrowing money from banks and individuals on notes, to permit one of their number to execute the notes and to sign the names of the other three thereon. Following this method, Shelton executed a note of $1,000 to one Phipps and signed his name and also the names of his father and two brothers. Later, becoming financially involved, he was unable to liquidate his debts and his father and two brothers declined to pay the note to which Shelton had affixed their signatures. This situation resulted in Shelton's indictment for forgery and his conviction of that crime. This court, in reversing that case, held that if Shelton, at the time he signed the names of his father and two brothers on the note, had authority so to do, or honestly believed that he had such authority, then he was not guilty of the crime of forgery and their subsequent denial of liability did not alter the character of his act.

In the case at bar, when we consider the testimony of Mrs. Keith in its entirety, it appears to conclusively show, despite certain contradictory language contained therein, that Smith had authority, either express or implied, to sign her name to checks. This he had done on previous occasions and his mother had ratified such acts by making the checks good. Moreover, she testified she would have paid the ten-dollar check which her son had given Kunnecke, if it had been presented to her. Thus it is quite clear that the authority, or implied authority, she had given him to execute checks under her signature had not been withdrawn. These facts make out a stronger case in Smith's favor than those in Shelton's favor in the opinion cited above. Shelton's authority to sign the name of his father and two brothers on the $1,000

note was denied by them, while Smith's authority to bind his mother on the ten-dollar check was admitted by her.

We conclude the Commonwealth failed to prove that Smith forged the check. Therefore, he was not guilty of the uttering offense, and the judgment is reversed and the case is remanded with directions that if the evidence be substantially the same at another trial the court shall charge the jury that they shall acquit Smith.