Brenda JOHNSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2006–CA–000737–MR.

Court of Appeals of Kentucky.

Aug. 17, 2007.

William M. Butler, Jr., Louisville, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, James Havey, Assistant Attorney General, Frankfort, KY, for appellee.

Before MOORE and THOMPSON, Judges; GRAVES,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

Brenda Johnson appeals her conviction in the Oldham Circuit Court on three counts of second-degree forgery. Having concluded that the trial court erred by excluding relevant evidence, we reverse and remand for a new trial.

---

1. Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

In September 1989, Brenda and John Johnson were married. The couple had two children in addition to John's two children from a previous marriage. Subsequently, one of John's children from his previous marriage, who by then was an adult, passed away. As the beneficiary of his child's life insurance policy, John received the death benefit proceeds and deposited them into an account, the Prudential account.

In early 2002, John, a reservist in the United States Navy, was called up for active duty and assigned to the Middle East. In accordance with the recommendation of the military for personnel stationed in a war zone, John and Brenda met with an attorney and did their estate planning. During this estate planning session, John executed a power of attorney which granted Brenda control over his financial assets but specifically prohibited her access to or control over the Prudential account. On March 22, 2002, John deployed to the Middle East.

Before and during John's deployment, during the period of October 26, 2001, to April 3, 2003, Brenda signed six checks, in John's name, for funds that were drawn against the Prudential account. Three of the checks were written to Brenda's company, The Cheesecakery, Inc., two checks were written to Brenda herself, and one check was written to John although he did not receive the check or its proceeds.

John returned home from the Middle East in June 2003. As he began to review his financial records, he realized that the Prudential account statements were missing. He contacted Prudential and they were able to send him copies of the missing statements. Eventually, Brenda admitted to John that she had disposed of the account statements to prevent John from discovering her use of the Prudential account.

On July 9, 2003, John filed for divorce, and, in time, the two were able to reach a comprehensive agreement which was memorialized in their property settlement agreement. The property settlement agreement provided, in pertinent part, as follows:

> 2.4 *STOCKS, BONDS, BUSINESS INTERESTS, AND BANK AND IN-STITUTIONAL ACCOUNTS.* The parties acknowledge that they have cash accounts located at the Navy Federal Credit Union and Prudential. The parties agree that Respondent shall receive $16,500.00 from said accounts and Petitioner shall receive $11,500 from said accounts. The parties agree this is a fair and equitable division.

Near the end of this document, Provision 6.4 provided:

> This Agreement constitutes the full and complete Property Settlement Agreement between the parties, and each party releases the other from any and all obligations and from any and all rights either may have in any property owned by the other, except as provided for herein. The parties hereby accept the consideration herein in full satisfaction of any and all claims they may have for maintenance, except as provided for herein, and in lieu of all rights of dower and curtesy, and to any property they now own or acquire, except as specifically provided hereinabove. Modification of the terms of this Property Settlement Agreement are expressly precluded.

Shortly after the execution of the settlement agreement, Judge Karen Conrad, who presided over the divorce case as well as Brenda's forgery case, issued a divorce decree which incorporated the agreement.

By July 2004, the parties were back in court litigating child support and maintenance issues. John moved the court to

reduce his child support and maintenance obligations, and Brenda moved the court to hold John in contempt for non-payment of the same. On August 27, 2004, Judge Conrad issued an order holding John in contempt for failing to meet his obligations and assessed arrearages against him. Within a month of this contempt order, on September 20, 2004, John called the police and informed them that Brenda had forged his name to six checks. Eventually, Brenda was indicted on six counts of second-degree forgery.

On the morning of trial, the Commonwealth filed a motion in limine for the exclusion of the divorce settlement from evidence based on its irrelevancy to Brenda's forgery charges. Brenda contended that the settlement was relevant to show her intent at the time of the check writing and to show that John ratified or acquiesced in the check writing which would absolve the criminality of her actions. After the hearing, the trial court issued an order excluding the settlement and most of the testimony regarding the parties' divorce. The court ruled that this evidence was irrelevant.[2]

During trial, the Commonwealth introduced testimony from John that his power of attorney specifically prohibited Brenda's access to the Prudential account, and that he otherwise never authorized her to sign the six checks in his name. The Commonwealth also introduced an unsigned document, which it stated was a duplicate of John's power of attorney, which specifically prohibited Brenda's access to the Prudential account.

Brenda testified in her own defense and agreed that John's power of attorney did prohibit her access to the Prudential account. She admitted that she had signed the checks in John's name. While she provided multiple reasons why she signed the checks, she never testified that she was authorized by John to sign the checks against the Prudential account. At the conclusion of the trial, Brenda was acquitted under the first three counts of the indictment. The first three counts stemmed from the three checks that Brenda signed before John executed his power of attorney on or about March 22, 2002. Brenda was found guilty under the last three counts of the indictment. The final three counts stemmed from the three checks that Brenda signed after John's execution of his power of attorney. Brenda was sentenced to one-and-a-half years' imprisonment which was probated on the condition that she pay restitution. This appeal followed.

On appeal, Brenda raises four allegations of error: (1) that the trial court erred by admitting John's testimony regarding the content of his power of attorney; (2) that the trial court erred by admitting the unsigned power of attorney; (3) that the trial court erred by excluding her divorce settlement and most of the testimonial evidence regarding her divorce; and (4) that Judge Karen Conrad erred by presiding over her criminal case after presiding over her divorce case. Based on these grounds, Brenda alleges that her conviction should be reversed.

---

**2.** This ruling appears to have been influenced by the trial court's disposal of Brenda's motion to dismiss the six-count indictment. In its pre-trial order denying Brenda's motion to dismiss, the trial court wrote that "[t]he property settlement agreement does not specifically mention the account at issue, which is known as the Prudential Alliance account."

Thus, the court concluded that the settlement agreement was not relevant in her criminal case. However, as set out earlier in this opinion, provision 2.4 of the property settlement agreement specifically addressed the Prudential account and its division between Brenda and John.

Brenda's first allegation is that the trial court erred by allowing John's testimony regarding the contents of his power of attorney without first admitting the document into evidence pursuant to the best evidence rule. Brenda further alleges that the Commonwealth's failure to produce the original or duplicate power of attorney, or justify the admission of John's testimony under KRE 1004 [3], should have precluded John's testimony regarding the content of his power of attorney because the admissibility requirements of the best evidence rule were not satisfied.

The foundation of the best evidence rule, found in KRE 1002, provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules, in other rules adopted by the Kentucky Supreme Court, or by statute." Essentially, this rule requires a party to introduce the most authentic evidence which is within their power to produce. *Marcum v. Commonwealth*, 390 S.W.2d 884, 886 (Ky.1965).

Additionally, a duplicate of an original document is admissible to prove the contents of the original under certain circumstances. KRE 1003. *See also Hart v. Commonwealth*, 116 S.W.3d 481, 487 (Ky. 2003). However, KRE 1007 provides, in pertinent part, that "[c]ontents of writings . . . may be proved by the testimony . . . of the party against whom offered . . . without accounting for the nonproduction of the original." In other words, even without the production of an original document

or its duplicate, the contents of a document may be proven by the testimony of the party whom the contents are offered into evidence against.

In this case, the trial court permitted John to testify that his power of attorney granted Brenda control over most of his financial accounts, but specifically prohibited her control of or access to the Prudential account. While Brenda contends that this testimony was impermissible since it was not accompanied by proper documentation pursuant to the best evidence rule, we conclude that her trial testimony affirming John's recitation of the contents of his power of attorney permitted John's testimony pursuant to KRE 1007.

During trial, Brenda testified that John's power of attorney specifically prohibited her from accessing the Prudential account. This was satisfactory proof that John's power of attorney prohibited her access to the Prudential account. *Marcum v. Commonwealth*, 390 S.W.2d at 887. John's testimony concerning the contents of his power of attorney did nothing more than duplicate Brenda's testimony. Thus, when a party alleging error in the admission of her adversary's testimony regarding a document's content testifies herself that the document contains the exact content as described in her adversary's testimony, we conclude that her adversary may introduce evidence of this admission without producing the original document as an exception to the best evidence rule. KRE 1007. *See also Valadez v. Barrera*, 647 S.W.2d 377, 383 (Tex.App. 4th Dist., 1983),

---

**3.** KRE 1004 provides that "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if: (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; (2) Original not obtainable. No original can be obtained by any available judi-

cial process or procedure; or (3) Original in possession of opponent. At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing."

and *Comerica Bank, N.A. v. Benedict,* 39 A.D.3d 456, 833 N.Y.S.2d 588, 590 (N.Y. 2007).

Brenda's second assignment of error is that the trial court improperly admitted John's unsigned power of attorney into evidence. Brenda alleges that this document was not the original or a duplicate of the original power of attorney. Brenda further alleges that the Commonwealth did not establish a "satisfactory explanation," pursuant to KRE 1004, for failing to introduce the notarized original or duplicate power of attorney that John claimed that he possessed on the day of trial. For these reasons, Brenda alleges that the unsigned document should not have been admitted into evidence.

■ Notwithstanding her argument, we conclude that the best evidence rule is inapplicable when, as here, the party challenging the admission of a document testifies that the contested document contains the same content as the original document that the challenging party observed. As Professor Lawson noted "[t]he best evidence rule exists to protect litigants from error and fraud when the contents of writings (recordings and photographs) are being *proved by adversaries* [emphasis added]." Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 7.30[4], at 543 (4th ed. LexisNexis 2003). Since Brenda's testimony and her adversary's evidence regarding the content of the power of attorney were identical, the need to protect Brenda from error or fraud is nonexistent; thus, the best evidence rule has no functional application. Under these circumstances, the exception to the best evidence rule, KRE 1007, applies to permit the document's introduction.

■ Regardless, even if we were to assume that the trial court erred as asserted in Brenda's first two allegations, appellate courts must apply harmless error analysis and "disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." RCr 9.24. "Under the harmless error doctrine, if upon consideration of the whole case it does not appear that there is a substantial possibility that the result would have been any different, the error will be held nonprejudicial." *Gosser v. Commonwealth,* 31 S.W.3d 897, 903 (Ky.2000), *citing Abernathy v. Commonwealth,* 439 S.W.2d 949, 952 (Ky.1969).

After applying this analysis, we conclude that any error by the trial court was harmless. In this case, Brenda's own testimony provided sufficient proof that John's power of attorney specifically prohibited her access to the Prudential account which was the main fact that John's testimony and the unsigned document were introduced to prove. Accordingly, if there were errors, they were harmless.

■ Brenda's third assignment of error is that the trial court erred by excluding portions of her evidence based on relevancy grounds. Specifically, Brenda alleges that the trial court's exclusion of her divorce settlement and most of the testimony regarding her divorce precluded her from offering evidence which could have been useful in presenting her defense. As to the divorce settlement, Brenda alleges that the settlement would have proven that John acquiesced or ratified her check writing by "settling" her use of the Prudential account; and thus, absolving her check writing of any illegality.

As to the exclusion of testimonial evidence, Brenda alleges that testimony regarding her divorce was improperly excluded. However, she does not state what specific testimony regarding her divorce was improperly excluded. While she does not specifically cite any improperly excluded testimony, she does allege that the ex-

clusion of a letter written by John prevented her from impeaching John's credibility as a witness. She further alleges that this document "could have resulted in the Jury acquitting the defendant on all charges."

 On appellate review of a trial court's rulings with respect to the relevancy of evidence, we observe that determining relevancy is a matter that is left largely to the sound discretion of the trial court. *Reece v. Nationwide Mut. Ins. Co.,* 217 S.W.3d 226, 232 (Ky.2007). When a trial court's evidentiary rulings as to relevancy are challenged, we review these rulings under an abuse of discretion standard. *Love v. Commonwealth,* 55 S.W.3d 816, 822 (Ky.2001). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

From a review of the facts, we conclude that the trial court committed reversible error by excluding the parties' property settlement agreement. By ruling that the settlement agreement did not specifically address the Prudential account, Brenda was precluded from asserting the defense of ownership which could have been decisive in the presentation of a successful defense. In *Stark v. Commonwealth,* 295 S.W.2d 337 (Ky.1956), the court held that a "co-owner" of property cannot be guilty of stealing such property. *See also Fugate v. Commonwealth,* 308 Ky. 815, 215 S.W.2d 1004, 1006 (1948). In this case, from the language of the property settlement agreement, Brenda should have been permitted to assert a co-ownership defense because the agreement specifically addressed the Prudential account as if it was marital property.

Moreover, the trial court's incorrect finding that the agreement did not address the Prudential account, as revealed by the record, improperly influenced its decisions in subsequent rulings. These series of rulings cannot be considered harmless because had the jury believed that Brenda was a co-owner of the property then she would have been entitled to an acquittal of the forgery charges.

 Further, since this case is being remanded for a new trial, we feel it important to address Brenda's ratification defense because she might attempt to assert it again. Brenda's reliance on *Smith v. Commonwealth,* 282 S.W.2d 618 (Ky.1955), for the proposition that John's purported post-check writing ratification or acquiescence supplied her with a forgery defense is misplaced. In *Smith,* the checking account holder testified that she had established the practice of allowing the defendant to sign checks in her name and that the defendant possessed the express or implied authority to do so. *Id.* at 619. In this case, John never established a practice of allowing Brenda to sign Prudential checks in his name and Brenda knew she was not authorized to sign; therefore, an acquiescence or ratification defense was and is inapplicable in Brenda's case barring the offering of new facts that would implicate the defense.

 We also conclude that the trial court erred by excluding the settlement agreement during the sentencing and restitution phases of the trial. In *Caudill v. Commonwealth,* 120 S.W.3d 635, 672–73 (Ky.2003), the court held that evidence bearing on the defendant's character, background, or the circumstances surrounding the offense for which she has been convicted are admissible. Certainly, evidence that John and Brenda had settled the Prudential account constitutes restitution to John and should have been admitted as a circumstance surrounding the charged crimes. Upon retrial, if Brenda is

convicted, this information should be presented to the jury to aid them in determining an appropriate punishment.

In *Fields v. Commonwealth,* 123 S.W.3d 914 (Ky.App.2003), this Court held that a criminal defendant must be given an opportunity to controvert the restitution claims against him to ensure that his constitutional due process rights are protected. *Id.* at 917. A trial court abuses its discretion when it fails to give a defendant a meaningful opportunity to contest the evidence against him at the restitution hearing. *Id.* at 917–18. In this case, the settlement agreement specifically divided up the Prudential account between Brenda and John and specifically provided that each party was released from owing any obligation to the other. This was clearly relevant evidence, and its exclusion was an abuse of discretion. *Id.*

■ Next, Brenda's claim that testimony regarding her divorce was improperly excluded is not sufficiently supported on appeal. In her brief, Brenda makes a general assertion that testimony was improperly excluded but does not assert what specific testimony was excluded and why the exclusion was error. Beyond suggesting errors, an appellant must make specific arguments in her brief supporting her allegations of error otherwise nothing is presented for appellate review. *Grief v. Wood,* 378 S.W.2d 611, 612 (Ky.1964). Since Brenda has not specifically stated what relevant testimony was improperly excluded, we are unable to grant her the relief that she seeks. *Ballard v. King,* 373 S.W.2d 591, 593 (Ky.1963).

■ Finally, Brenda's claim that the trial court erred by excluding a letter, written by John, was not properly preserved for appellate review. Brenda never submitted this letter to the trial court for a ruling on its admissibility. Appellate courts do not have the authority to review alleged errors that were not raised in or decided by the trial court. *Fischer v. Fischer,* 197 S.W.3d 98, 102 (Ky.2006); *Anastasi v. Commonwealth,* 754 S.W.2d 860, 862 (Ky.1988). Attempting to avoid this rule, Brenda alleges that the trial court would have obviously excluded this letter based on its ruling on the Commonwealth's motion in limine; thus, she argues that its submission at trial was unnecessary for the purpose of preserving the error. We disagree.

■ A trial court's ruling on a motion in limine cannot be used as a talismanic tool to preserve evidentiary issues that were not properly objected to during the trial. *Lanham v. Commonwealth,* 171 S.W.3d 14, 21 (Ky.2005). In order for a blanket motion in limine to be sufficient to preserve an issue for appellate review, the issue must have been fairly brought to the attention of the trial court. *Id.* In this case, the trial court motion in limine order only excluded irrelevant testimony regarding Brenda's marriage and not all testimony regarding her marriage. Moreover, Brenda did present testimony regarding her marriage and regarding John's mental state during the marriage. Thus, the trial court's ruling was not so broad in scope as to fairly address John's letter and obviate the necessity for placing its admissibility before the trial court for a ruling. *Id.* Accordingly, we cannot review this alleged error on appeal.

■ Brenda's fourth allegation is that Judge Conrad committed reversible error by presiding over her criminal case after presiding over her divorce case. Brenda argues that Judge Conrad's presiding over her divorce case improperly motivated her to make erroneous prejudicial rulings against her in her forgery case. Brenda did not move for Judge Conrad's recusal before or during her forgery trial.

A party alleging that a trial judge should recuse from her case must move for recusal immediately after discovering the facts upon which the disqualification rests. *Bailey v. Bailey*, 474 S.W.2d 389, 391 (Ky.1971). If the motion for recusal is not made at this time, the issue will be considered waived and the issue will not be considered. *Bussell v. Commonwealth*, 882 S.W.2d 111, 113 (Ky.1994). Notwithstanding this statement of the law, even when a timely motion for recusal is not made, a trial judge must recuse herself when presiding over a matter that would violate statutory mandates for impartiality. *Carter v. Commonwealth*, 641 S.W.2d 758, 759–60 (Ky.App.1982). A court's failure to sua sponte recuse under these circumstances constitutes reversible error. *Id.* at 759–60.

In this case, Brenda did not move for the recusal of Judge Conrad despite the fact that she knew prior to her trial that Judge Conrad had presided over her divorce case. Since she knew the facts upon which her disqualification allegation rested and yet failed to move for Judge Conrad's recusal at trial, we conclude that Brenda has waived her right to argue her claim for recusal on appeal. *Bussell v. Commonwealth*, 882 S.W.2d at 113. Moreover, because the underlying factual issues in her divorce case and criminal case are not sufficiently related, Judge Conrad's presiding over Brenda's criminal case did not violate any statutory mandates for impartiality. *Small v. Commonwealth*, 617 S.W.2d 61, 63 (Ky.App.1981).

Additionally, the record refutes such allegations. Upon Brenda's motion, Judge Conrad held John in contempt for failing to meet his maintenance and child support obligations. From our review, Judge Conrad has been nothing but fair and impartial throughout all of these proceedings.

Accordingly, Judge Conrad's presiding over this case was not error.

For the foregoing reasons, the final judgment and sentence of the Oldham Circuit Court is reversed and the case is remanded for a new trial.

ALL CONCUR.