Sophia SAVAGE and Darrell Savage,
Appellants/Cross–Appellees

v.

THREE RIVERS MEDICAL CENTER,
Appellee/Cross–Appellant.

Nos. 2010–SC–000478–DG,
2011–SC–000348–DG.

Supreme Court of Kentucky.

Oct. 25, 2012.

Harry Truman Chafin, Letitia Neese Chafin, The H. Truman Chafin Law Firm PLLC, Williamson, WV, Michael Todd Hogan, Hogan, Derifield & Perdue PLLC, Louisa, KY, Counsel for Appellants/Cross–Appellees.

William P. Swain, David Sean Ragland, Phillips, Parker, Orberson & Arnett, PLC, Louisville, KY, Counsel for Appellee/Cross–Appellant.

Kevin Crosby Burke, Louisville, KY, Counsel for Amicus Curiae.

Opinion of the Court by Justice VENTERS.

This case began when Appellants, Sophia Savage and Darrell Savage, brought an action in the Lawrence Circuit Court alleging medical malpractice in a 2001 surgical procedure. The first trial ended in a verdict favorable to Appellants. However, Appellee, Three Rivers Medical Center (Three Rivers), moved for judgment notwithstanding the verdict (JNOV) and, in the alternative, for a new trial. The trial court agreed that the first trial was tainted by evidentiary error. It denied Appellee's motion for JNOV, but granted its request for a new trial. The second trial resulted in a verdict even more favorable for Appellants, and Three Rivers appealed. The Court of Appeals concluded that the trial court erred by failing to grant Three Rivers's motion for JNOV and by granting the new trial instead. The Court of Appeals therefore reversed the verdict from the second trial, and ordered the dismissal of Appellants' claims against Three Rivers.

We granted discretionary review of the Court of Appeals opinion to examine the standards for awarding JNOV as opposed to a new trial. Upon cross-motion for discretionary review, Three Rivers argues that if we uphold the trial court's decision to grant a new trial, then the verdict of that trial must be set aside upon the following grounds: 1) evidence was improperly admitted at the second trial; 2) an unqualified witness was permitted to give expert opinion testimony; 3) the trial court erroneously rejected an apportionment instruction which would have permitted the jury to assign a portion of the fault to a settling non-party; and 4) the damages awarded in the second trial were excessive.

For the reasons stated below, we reverse the Court of Appeals because the trial court properly exercised its discretion when it ordered the new trial and denied Three Rivers's request for JNOV. Upon consideration of the issues presented on cross-appeal by Three Rivers, we discern no error.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1978, Sophia Savage, who is a registered nurse, underwent a caesarian section and in 1982 she had gallbladder surgery. Both of these surgeries involved invasive procedures into her abdominal area. As a result of an accidental fall in 1993, x-ray images of the same section of Sophia's abdomen were taken at Appalachian Regional Hospital (ARH) in Williamson, West Virginia.

On December 14, 2001, Sophia had a hysterectomy at Three Rivers Medical Center. The surgery was performed by Dr. Curtis Edens, with Three Rivers providing the operating room facilities and the surgical support staff. In the years following the 2001 surgery, Sophia began experiencing intestinal and digestive problems, pain, and other serious physical symptoms indicating that something was wrong in her abdomen. In 2005, a CT scan revealed the presence of a surgical sponge in Sophia's abdomen. The sponge was surgically removed the next day. The surgery required a tri-section of Sophia's small intestines and disclosed an infection in the area where the sponge was located.

Appellants filed a timely action alleging that the sponge left in Sophia's abdomen was caused by the negligence of Dr. Eden and three of Three Rivers's operating room nurses during the 2001 surgery. Dr. Edens settled the claims against him prior to the commencement of the first trial in June 2008.

The 1993 ARH x-rays became an important piece of evidence in the first trial. Because those x-ray images indicate that no sponge was in Sophia's abdomen in 1993, they tend to eliminate the earlier surgical procedures as likely sources of the sponge found in 2005. Counsel for Appellants, however, made several serious missteps in getting the 1993 x-rays admitted into evidence at the first trial. As a result, they were admitted without proper authentication. When these irregularities were discovered midway through the first trial, Three Rivers moved for a mistrial. The trial court declined to grant a mistrial at that time, but opted instead to defer its ruling until the post-trial proceedings when, presumably, it could better gauge the prejudicial effect of the improperly admitted evidence. We discuss the events surrounding the admission of the 1993 x-rays into the first trial in detail in Section II, *infra*, and discuss issues relating to the admission of the evidence in the second trial in Section III–1, *infra*.

In the first trial, the jury returned a verdict against Three Rivers of $61,178.08 for Sophia's medical expenses, $800,000.00 for her past and future pain and suffering, and $0.00 for Darrell's loss of consortium claim. Following entry of a judgment consistent with the jury verdict, Three Rivers filed a timely motion for JNOV and, alternatively, for a new trial. The basis for that motion, like the earlier motion for a mistrial, was the improper admission of the 1993 x-rays. The trial court agreed that the x-rays had not been properly authenticated and should not have been admitted. In the exercise of its discretion, the trial court granted Three Rivers's motion for a new trial, and correspondingly denied its motion for JNOV. Paramount to the trial judge's reasons for granting a new trial instead of JNOV was his finding that, even without the 1993 x-rays, there

was "ample evidence upon which the jury could determine that the sponge left in [Sophia's] abdomen was left during the surgery performed by Three Rivers Medical Center in December 2001."

The case proceeded to a second trial in March 2009. While Three Rivers continued to object to the admission of the 1993 x-rays, the trial court determined that the disqualifying factors that rendered the x-rays inadmissible in the first trial had been cured, and that in the second trial Appellants had properly authenticated the x-rays. Accordingly, the x-rays were admitted into evidence at the second trial. The jury returned a verdict awarding medical expenses of $65,968.70, but this time it awarded Sophia $2,000,000.00 in damages for past and future pain and suffering, and Darrell $500,000.00 for loss of consortium.

Following the second trial, Three Rivers moved for JNOV and alternatively, for a new trial. The trial court denied the motions despite its finding that the damages awarded were excessive. Specifically, the trial court found that the "verdict is excessive, and appears to be the result of passion and prejudice on the part of the jury." However, instead of ordering a new trial on damages, the trial court entered judgment in accordance with the verdict. An appeal to the Court of Appeals followed.

The Court of Appeals held that at the conclusion of the first trial, the trial court should have granted JNOV instead of a new trial. The Court of Appeals reasoned that JNOV was the proper remedy based upon its conclusion that, without the 1993 x-rays, Appellant's evidence did not adequately establish the 2001 surgery at Three Rivers as the probable source of the retained sponge, to the exclusion of the 1978 or 1982 abdominal surgeries that Sophia had undergone.[1]

We granted discretionary review to examine the standards for awarding JNOV, in contrast to a new trial, when the post-trial exclusion of inadmissible evidence results in the failure of an important element of the prevailing party's case. We granted Three Rivers's cross-motion for discretionary review to consider, if necessary, the fairness of the second trial.

## II. DIRECT APPEAL: THE TRIAL COURT PROPERLY GRANTED A NEW TRIAL INSTEAD OF JNOV

In their respective briefs, the parties devote considerable attention to whether the 1993 x-rays were properly admitted into the first trial. Clearly they were not. Upon proper authentication they were admissible, but it is beyond a reasonable dispute that, in the first trial, they were admitted into evidence upon an improper and deceitful authentication.[2] A detailed analysis of the point merely diverts attention from the more pertinent issue at hand: whether, upon recognition of the improper admission of the x-ray evidence and clear reflection upon its possible impact upon the verdict, the trial court

1. The Court of Appeals opinion was a 2–1 decision. The dissenting judge agreed with the trial judge's holding that even without the 1993 x-rays, there was "ample" evidence to establish Appellants as the most likely source of the sponge.

2. The x-rays were taken at ARH in 1993 and, under prevailing regulations, maintained there for only five years. Sophia, however, had retained her own copy of her x-rays with appropriate identifying information. She turned them over to her attorneys for use in the lawsuit. Despite well-established methods to properly introduce x-rays in situations where the patient possesses them but the hospital does not, counsel pursued a misguided effort to offer the x-rays that had been kept in Sophia's closet for fifteen years as ARH business records.

abused its discretion by granting a new trial rather than JNOV.

Our review of that issue begins where it must, with a look at CR 50.02, which states:

> Not later than 10 days after entry of judgment, a party who has moved for a directed verdict at the close of all the evidence may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned, such party within 10 days after the jury has been discharged may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. *If a verdict was returned the court **may** allow the judgment to stand **or may** reopen the judgment and either order a new trial **or** direct the entry of judgment as if the requested verdict had been directed.* If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

(emphasis added).

■ When reviewing a trial court's denial of JNOV, "we are to affirm ... 'unless there is a *complete absence of proof on* a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ.'" *Fister v. Commonwealth*, 133 S.W.3d 480, 487 (Ky. App.2003) (quoting *Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky.App.1985)) (emphasis added). Likewise, "'[t]he trial court is vested with a broad discretion in granting or refusing a new trial, and this Court will not interfere unless it appears that there has been an abuse of discretion.'" *Id.* (quoting *Whelan v. Memory–Swift Homes, Inc.*, 315 S.W.2d 593, 594 (Ky.1958)). "The

reason appellate courts defer to the trial court's decision to grant a new trial is because the decision may depend on factors that do not readily appear in the appellate record, such as witness demeanor and observations of the jury." *Certain-Teed Corp. v. Dexter*, 330 S.W.3d 64, 74 (Ky.2010). Nevertheless, "[o]rdinarily, when the holding is that the defendant's motion for a directed verdict should have been sustained because the plaintiff failed to prove his claim, a judgment n.o.v. will be directed. That is on the theory that the plaintiff had a fair opportunity to establish his claim and is not entitled to a second chance." *Cheshire v. Barbour*, 455 S.W.2d 62, 66 (Ky.1970). Based upon these standards, we now consider the merits of Appellants' claim that the Court of Appeals erred in its holding that Three Rivers was entitled to JNOV following the first trial.

■ In its review, the Court of Appeals appears to have erred by presupposing that, if Appellants' proof without the inadmissible x-ray evidence was not sufficient to sustain their burden of proof, then the *only* option available to the trial court was to grant the defendant JNOV. That view, however, is contrary to the plain language of the rule. As noted above, the relevant provision of CR 50.02 provides that *"[i]f a verdict was returned the court **may** allow the judgment to stand **or may** reopen the judgment and either order a new trial **or** direct the entry of judgment as if the requested verdict had been directed."* (emphasis added). Accordingly, the rule's use of the words "may" and "or" affords the trial court as an alternative to upholding the jury's verdict, discretion to either (1) order a new trial, or (2) grant JNOV. Obviously, because of the endless variety of circumstances which may arise in an individual case, whether the proper remedy is JNOV or a new trial in a particular

situation must be determined on a case-by-case basis.

██ Several important factors support the trial court's decision to grant Three Rivers a new trial as opposed to dismissing Appellants' claims under JNOV. First, when it was determined in the first trial that the x-rays had been improperly authenticated as an ARH business record, Three Rivers moved for a mistrial. If the trial court had then granted the mistrial that Three Rivers requested, the result would have been a second trial, which would have ultimately produced a result identical to the trial court's later ruling. Instead, when the issue arose, the trial court expressly noted the serious problem with the evidence, but decided to let the trial play out to a final verdict with the intention of revisiting the motion for a mistrial at a later time. In a very real sense, that is what the trial court did when it ruled on the CR 50.02 motion and granted Three Rivers's motion for a new trial. The trial court thus granted relief in exact accordance with its mid-trial motion for a mistrial.

 Second, this case is very different from a situation in which a plaintiff has fully presented his proof without important evidence being "factored out" pursuant to post-trial motions, and upon post-verdict review it is determined that there was a fatal failure in a crucial element of the plaintiffs case. There, JNOV is clearly

appropriate because the plaintiff had fully presented his case and simply failed. JNOV is precisely the relief made available by CR 50.02 when it authorizes "*the entry of judgment as if the requested verdict had been directed.*" In that instance, JNOV is the means by which a trial court may retroactively grant the relief that should have come in the form of a directed verdict. If a trial court improperly refuses to direct the verdict in favor of the defendant at the close of the plaintiff's case, JNOV would certainly be appropriate. *See Cheshire,* 455 S.W.2d at 66. Again, we are reminded that the trial court described Appellants' evidence, even without the 1993 x-rays as "ample evidence upon which the jury could determine that the sponge left in [Sophia's] abdomen was left during the surgery performed by Three Rivers Medical Center in December 2001." The trial court also found "there was clearly sufficient evidence . . . regardless of the x-ray evidence" to support Appellants' claims. It is apparent that even without the 1993 x-rays, a directed verdict was not a realistic expectation.[3]

██ While second bites at the apple are certainly disfavored and mishandling of the 1993 x-rays should not be lightly regarded,[4] the appellate court's test, is, not to impose its view of the proper remedy, but rather to determine whether the trial court abused its discretion in making *its*

3. That ample evidence includes the fact that the sponge, if left in either the 1978 or 1982 surgery, was not found during the 2001 surgery, suggesting that it was not there prior to the 2001 surgery, and further by the absence of any symptoms during the two decades that expired between the prior surgeries and the 2001 surgery.

4. On its face, the circumstances raise doubts about whether Appellants' trial counsel acted with the necessary candor to the trial court when the x-ray evidence was first proffered.

SCR 3.130(3.3). However, given the trial judge's more precise familiarity with the situation and his duty under SCR 4.300, Canon 3(D)(2) of the Code of Judicial Conduct (A judge having knowledge that a lawyer has committed a violation of the Kentucky Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects should inform the appropriate authority), we presume that the matter has been appropriately addressed.

decision concerning the proper remedy. Here, there certainly was not a *"complete absence of proof* on a material issue in the action," *Fister,* 133 S.W.3d at 487 (emphasis added), and thus we simply cannot say that the trial court abused its discretion in opting for a new trial in lieu of JNOV.

■ We end our discussion of this issue by addressing the position of Appellants and *amicus curiae,* Kentucky Justice Association, that under the facts of this case, the doctrine of *res ipsa loquitur* would permit the jury to infer that the source of the retained sponge was the 2001 surgery at Three Rivers. Certainly, as we said in *Nazar v. Branham, res ipsa loquitur* allows the jury to infer negligence solely from the fact that a surgical item was left in the patient's body. 291 S.W.3d 599, 603 (Ky.2009). But the inference afforded by *res ipsa loquitur* that someone was negligent does not necessarily mean that Three Rivers was negligent.

■ The absence of symptoms prior to the 2001 surgery, and the very long span of time—24 years—between the onset of symptoms and the previous surgery may suggest that the sponge was lost during the 2001 surgery, but laypersons do not generally know the time required for a retained surgical sponge to become symptomatic. Some medical phenomena are counter-intuitive. It *might* be possible that a surgical sponge left at this particular location would not, in fact, be expected to cause problems for twenty to twenty-five years. Without some medical expertise, one cannot categorically exclude the prior surgeries as possible sources of the sponge. Applying *res ipsa loquitur* to a specific defendant in a specific case re-

quires a showing that the defendant had full control of the instrumentality which caused the injury. *See Ryan v. Fast Lane, Inc.,* 360 S.W.3d 787, 790 (Ky.App. 2012). If the injury can plausibly be attributed to negligence in the prior surgery, it cannot be said that Three Rivers had full control of the instrumentality (that is, the sponge) that caused the injury. Because the two prior surgeries were not ruled out by expert evidence as possible sources of the sponge negligently left in the patient's body, the Court of Appeals is correct that the doctrine of *res ipsa loquitur* could not be applied to permit the inference that the 2001 surgery at Three Rivers was the source of the negligently caused injury.[5]

■ While in the proper case an appellate court is authorized to do just as the Court of Appeals did in this case, that is, enter JNOV after factoring out inadmissible evidence, appellate courts "should 'be constantly alert' to 'the trial judge's firsthand knowledge of witnesses, testimony, and issues'; in other words, appellate courts should give due consideration to the first-instance decision maker's feel for the overall case" in determining whether the proper remedy following exclusion of evidence is JNOV or a new trial. *Weisgram v. Marley Co.,* 528 U.S. 440, 443–444, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000) (quoting *Neely v. Martin K. Eby Constr. Co.,* 386 U.S. 317, 325, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967)). Upon application of this principle, we conclude that the Court of Appeals erred when it held that the trial court was required to enter JNOV for Three Rivers following the exclusion of the 1993 x-rays from the plaintiffs case in the first trial. The trial court properly exer-

---

5. As noted, there was sufficient circumstantial evidence without *res ipsa loquitur* to conclude Three Rivers was at fault, including not only the lack of symptoms until after the 2001 surgery, but also the facts that the 2001 sur-

gery was performed at the site where the sponge was later found, and that the 2001 surgery itself did *not* uncover the sponge as it might have if the sponge was already there.

cised its discretion by instead ordering a new trial.

### III. THREE RIVERS'S CROSS–PETITION: NO REVERSIBLE ERROR OCCURRED DURING THE SECOND TRIAL

In its cross-petition, Appellee argues that in the event we uphold the trial court's decision to grant a new trial, which we have now done, then we should further vacate the judgment in the second trial because (1) the 1993 x-ray of Sophia's abdomen was improperly admitted into evidence at that trial; (2) a nurse practitioner, Dorothy Cooke, was improperly permitted to testify concerning her interpretation of the 1993 x-ray; (3) the trial court erred by rejecting its apportionment instructions which would have permitted the jury to assign a portion of the fault to Dr. Edens, the surgeon who performed the 2001 surgery; and (4) the $2,500,000.00 jury award in the second trial was excessive.

#### 1. The 1993 X-rays were Properly Admitted

Three Rivers contends that the trial court erred by admitting the 1993 x-rays in the second trial because (1) Sophia's testimony as to the chain of custody was deliberately withheld from the court and the parties at the first trial, during which time Appellants' counsel sought to obtain an ineffectual authentication from an employee of ARH who was not, by his own admission and by the court's findings, the custodian of the record; (2) the plaintiffs failed to comply with the clear mandate of KRE 902(11)(b) and other relevant requirements in that they did not make the x-rays available for inspection by the defense sufficiently in advance of its offer into evidence to provide the defense with a fair opportunity to challenge it; and (3) Sophia, as a party to the lawsuit, had an obvious motive to misrepresent her chain of custody testimony

 KRE Article X addresses proving the contents of, among other things, x-rays. KRE 1001, The best evidence rule, the foundation of which is contained in KRE 1002, provides that "[t]o prove the content of a writing, recording, or photograph [e.g. an x-ray], the original writing, recording, or photograph is required, except as otherwise provided in these rules, in other rules adopted by the Kentucky Supreme Court, or by statute." Essentially, this rule requires a party to introduce the most authentic evidence which is within their power to present. *Marcum v. Commonwealth*, 390 S.W.2d 884, 886 (Ky.1965); *Johnson v. Commonwealth*, 231 S.W.3d 800, 805 (Ky.App.2007). Accordingly, it was Appellants' burden to produce the most authentic evidence of the 1993 x-rays which was within their power to present. Because ARH did not retain the original x-rays as part of its routine record retention policy, and, accordingly, the only known representation of the x-rays in existence at the time of the litigation was the copy that Sophia had kept at her home, her copy was the most authentic evidence which she could present.

 KRE 1004 provides that:

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if: (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; (2) Original not obtainable. No original can be obtained by any available judicial process or procedure; or (3) Original in possession of opponent. At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or

otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing.

Here, the original x-rays had been lost or destroyed, or were not otherwise obtainable, and, therefore, under KRE 1004, "other evidence of the contents of [the x-rays] is admissible" if the stated conditions are satisfied. Similarly, KRE 1003 provides that "A duplicate is admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) In the circumstances it would be unfair to admit the duplicate in lieu of the original."

Three Rivers does not raise a genuine question as to the authenticity of the now-destroyed original x-ray films maintained by ARH after its 1993 treatment of Sophia. Further, because the originals are now destroyed and unobtainable, it would not be unfair to admit the duplicate kept by Sophia in lieu of the original. Thus, KRE 1003 is satisfied.

 Nevertheless, there remains the question of whether the x-rays produced by Sophia are, as she claims, actual duplicates of the x-rays created by ARH in 1993. This aspect of the issue is resolved by KRE 901(a), which provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pursuant to KRE 901(b)(1), the necessary proof that an item in question is what its proponent claims it to be may be supplied by "[t]estimony of [a] witness with knowledge. Testimony that a matter is what it is claimed to be."

During the second trial, in connection with the introduction of the x-rays, Sophia gave a full accounting of how the x-rays were created at ARH in 1993; how she got the copy which she kept in a closet in her residence; and how when it was determined that ARH had destroyed its copy, she retrieved the x-rays from the closet and gave it to her attorneys. This testimony was sufficient to support a finding that the matter in question (the 1993 x-rays) is what its proponent claims; moreover, this testimony at the same time would also satisfy any chain of custody concerns.

Thus, the threshold for authentication, as provided for in KRE 901(b)(1), is fully satisfied. Moreover, we note that the x-rays had an attached label which was established at trial as being fully consistent with what a label on an x-ray created of Sophia would look like at ARH in 1993. To the extent that the credibility of the x-ray evidence remained open to challenge, Three Rivers was free to present any attack against the authenticity of the x-rays to the jury it deemed appropriate. KRE 1008 ("when an issue is raised: (a) Whether the asserted writing ever existed; (b) Whether another writing, recording, or photograph produced at the trial is the original; (c) Whether other evidence of contents correctly reflects the contents, *the issue is for the trier of fact to determine as in the case of other issues of fact.*")(emphasis added). The trial court did not abuse its discretion in permitting Appellants to present the 1993 x-rays into evidence during the second trial.

 Next, Three Rivers argues that the evidence was improperly admitted in the second trial because of the various irregularities surrounding the x-rays in the first trial, and because the plaintiffs originally failed to comply with discovery and disclosure requirements in connection with the x-rays. Although these arguments were clearly a factor in the trial court's decision to set aside the original verdict

and grant a new trial, they clearly have no application to the second trial. Three Rivers had plenty of time between the first trial and the second trial to investigate and mount a challenge to admission of the x-rays. By the time of the second trial, any prejudice associated with the misrepresentation of the source of the x-ray evidence, and any prejudice associated with discovery violations, had dissipated and was not relevant to the integrity of the second trial.

Finally, Three Rivers argues that the x-rays should have been excluded because Sophia had an obvious motive to misrepresent her chain of custody. As with any such testimony, her credibility on the matter is an issue for the jury to consider. As to Sophia's motive to fabricate, we see no reason why the credibility of a patient who has maintained possession of important documents favorable to her claim should be treated differently than that of a hospital records custodian whose testimony has always sufficed to authenticate documents or x-rays in his possession, even when they are favorable to his employer. Sophia was subject to cross-examination on the matter and any other test of her credibility that Three Rivers opted to assert. Her interest in the admissibility of the x-rays does not negate their admission into evidence. For the foregoing reasons, the 1993 x-ray evidence was properly admitted at the second trial.

### 2. Nurse Practitioner Cooke's Testimony

Three Rivers contends that the trial court erred by permitting Dorothy Cooke, a nurse practitioner, to testify concerning her interpretation of the 1993 x-rays because she lacked the qualifications to do so. A trial court's determination as to whether a witness is qualified to give expert testimony under KRE 702 is subject to an abuse of discretion standard of review. *See Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 378 (Ky.2000); *Fugate v. Commonwealth*, 993 S.W.2d 931, 935 (Ky.1999).

KRE 702 provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, *a witness qualified as an expert by knowledge, skill, experience, training, or education,* may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

(emphasis added).

The evidence presented at trial discloses that Cooke is a highly trained nurse with approximately forty years of nursing experience. She is in fact a nurse-practitioner and, in addition, holds a Ph.D. in health organization research. She is a professor of nursing at St. Louis University. We agree that in the normal case, this education, training, and experience alone may be insufficient to establish Cooke as an expert with the credentials contemplated under KRE 702 to give expert testimony involving the interpretation of x-rays.

However, our review of the applicable authorities indicates that the expertise needed to qualify as a witness competent to testify about x-rays is not confined to medical doctors. *Daniels v. Bernard*, 270 S.C. 51, 240 S.E.2d 518 (1978) (chiropractor held competent in a personal injury action to interpret x-rays); 31A Am. Jur.2d *Expert and Opinion Evidence* § 267 ("A qualified doctor may testify as

to his interpretation of X–Rays taken by another doctor."); 32 C.J.S. *Evidence* § 862 ("Any person who possesses the requisite scientific knowledge may testify as to the application of the X ray to the human body. The application of the x-ray to the human body may be explained by any person who possesses the requisite scientific knowledge to understand it, and it is not necessary for one to be a physician in order to be qualified to testify as an expert with respect thereto. Whether a witness is qualified to interpret x-rays is a question for the determination of the trial judge in the exercise of a sound discretion. Persons who follow the profession of making x-ray pictures usually are qualified to interpret them, and so is the average physician. Being a physician, however, does not, in itself, qualify one as a competent interpreter of an x-ray picture; a showing that the witness is qualified to interpret the picture is necessary.") (citations omitted).

Here, however, in addition to her advanced education, evidence demonstrated that Cooke has specialized and unique training which we are convinced excepts her from the usual rule that nurses will not normally be qualified to present expert testimony requiring the interpretation of an x-ray. Cooke served for several years as a field hospital nurse in the Vietnam War, and during that time was assigned the duty of interpreting the x-rays of wounded American soldiers for bullets and shrapnel, and then reporting her findings to the surgeons operating on the injured troops. Accordingly, Cooke has specialized training in analyzing x-rays for the presence of foreign metal, which was exactly the task at issue in interpreting the 1993 x-rays. As shown by the evidence, a surgical sponge has a metal tag attached to it for the precise purpose of allowing it to be located on an x-ray. Because Cooke had honed her skills for identifying metal objects on x-ray film through her experience of examining hundreds of x-rays of wounded soldiers in Vietnam, we are persuaded that the trial court did not abuse its discretion in determining that she was qualified to testify as to the absence of a surgical sponge in the 1993 x-ray. *Bratcher v. Commonwealth*, 151 S.W.3d 332, 352–53 (Ky.2004) (witness in murder prosecution was qualified to testify as an expert on ligatures, or garrotes, used for strangulation because witness had received extensive training in the Army on use of ligatures, and witness had practical experience in the use of ligatures and had taught other soldiers in their use); *Bush v. Michelin Tire Corp.*, 963 F.Supp. 1436, 1442 (W.D.Ky.1996) (witness need not be an engineer with formal education to qualify as an expert; rather, "[e]xperience is sufficient to establish expertise.").

In any event, a radiologist also testified during the second trial about the 1993 x-ray and, like Cooke, he also concluded that there was no sponge in the portion of Sophia's abdomen covered by the x-rays. Therefore, even if Cooke's qualifications were found lacking, her testimony was cumulative to the radiologist's testimony and any error in admitting her testimony would have been harmless.

### 3. Apportionment of Fault Instruction

Three Rivers also contends that the trial court erred by failing to give its tendered apportionment instruction which would have permitted the jury to assign a portion of the fault for leaving the sponge in Sophia's abdomen to the surgeon who performed the operation. Dr. Edens was an original defendant who settled his case before trial. Three Rivers contends that the trial court erred in rejecting its claim that the testimony of Dr. Collela, an expert witness retained by Appellants, sufficiently

established that Dr. Edens had deviated from the standard of care in performing Sophia's 2001 hysterectomy.

 KRS 411.182 requires an instruction permitting the apportionment of fault "[i]f there is an active assertion of a claim against joint tortfeasors, and the evidence is sufficient to submit the issue of liability to each, an apportionment instruction is required whether or not each of the tortfeasors is a party-defendant at the time of trial." *Floyd v. Carlisle Const. Co., Inc.*, 758 S.W.2d 430, 432 (Ky.1988). Or, as we have stated more explicitly in a case in which the instructions improperly allowed the jury to apportion damages to parties without finding them at fault:

> Fault may not be properly allocated to a party, a dismissed party or settling non-party unless the court or the jury first finds that the party was at fault; otherwise, the party has no fault to allocate. The mere fact that a party has been sued or has settled does not permit the factfinder to allocate part of the total fault to that party.

*Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 471 n. 5 (Ky.2001) (citation omitted); *see also Morgan v. Scott*, 291 S.W.3d 622, 634 (Ky.2009) ("[F]ault may be apportioned only among those against whom the evidence of liability was sufficient to allow submission of the issue of fault to the jury."). Therefore, if evidence was presented at trial sufficient to demonstrate that Dr. Edens was at fault, under our comparative negligence procedures, the jury instructions must provide the jury with the option of assigning fault to him, and thereby reduce the portion of the damages assignable to Three Rivers. The rule is well settled that "[e]ach party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it." *Farring-*

*ton Motors, Inc. v. Fidelity & Cas. Co. of N.Y.*, 303 S.W.2d 319, 321 (Ky.1957).

 Trial courts, however, have the authority to deny requested instructions, and if there is doubt that the evidence supports the giving of an instruction, their decision to do so will only be reversed for an abuse of discretion. *See Olfice Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky.2005); *Nazar v. Branham*, 291 S.W.3d 599 (Ky. 2009).

 It is fundamental that "[u]nder Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010) (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655–56 (Ky.1992)). Perforce, the converse analogue to this is that a defendant who wishes to apportion fault for an injury to a medical provider based upon an allegation of medical negligence must put forth expert testimony to show that the medical provider failed to conform to the appropriate standard of care. *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 74 (Ky.2010) ("Empty-chair defendants who have settled are to be treated no differently than participating defendants in regard to what must be proved to apportion fault against them. Though the empty-chair defendant will not actually be held liable in the trial, since it is literally not on trial, a participating defendant must still prove liability on the part of the tortfeasor onto whom it seeks to shift some of the blame.").

 Three Rivers cites us to the following trial testimony of Dr. Collela, stated under cross-examination by Three Rivers:

> Q. And it's true that Dr. Edens was the person who was responsible before

he completed the procedure to see that instruments and sponges were taken out?

A. It's a team responsibility, but I understand he's part of that responsibility and probably the majority of it from the standpoint of taking the sponges out ... [it's] a collective team responsibility to get that count right.

Three Rivers thus concludes that this testimony "tars with the same brush Dr. Edens and the hospital nurses."

Upon review, we are persuaded that this brief, isolated reference to Dr. Edens's role in the "collective team responsibility" for the sponge count is inadequate to affix liability to him, and is therefore inadequate to justify an apportionment instruction that includes him. Upon examination of the testimony, it is apparent that it does not identify with specificity the relevant standard of care applicable to a surgeon in a retained object case, nor does it examine Dr. Edens's specific conduct during the surgery so as to demonstrate how he breached the relevant standard of care. In fact, it does not identify Dr. Edens's conduct during the operation at all, nor relate that conduct to a breach of the standard of care. Because Three Rivers failed to meet its burden of establishing by expert testimony the standard of care imposed upon Dr. Edens in a surgery such as this, and that he breached that standard of care by his specific actions or failure to act, the trial court properly denied Three Rivers's request for an apportionment instruction.

### 4. Excessive Damages

Finally, Three Rivers contends that the trial court erred by failing to grant a new trial on damages upon the grounds that the damages were excessive. As previously noted, in the first trial, the jury returned a verdict of $800,000.00, excluding medical expenses. The jury in the second trial returned a verdict for the following damages: $65,968.70 for Sophia's past medical expenses; $1,934,031.30 for Sophia's past and future pain and suffering; and $500,000.00 to Darrell as compensation for "loss of services, assistance, aid, society, companionship and conjugal relationship ... as a direct result of" Sophia's injuries.

During the post-trial proceedings following the first trial, the trial court specifically determined that the $861,178.08 award was not excessive; however, in considering the damages award following the second trial, the trial court stated:

From reviewing the evidence, it is clear that the Plaintiff Sophia Savage sustained a considerable injury, and underwent pain and suffering as a result of the negligence of the hospital's employees. She was required to undergo major abdominal surgery to remove a surgical sponge that had adhered to her intestines. The surgeon was required to cut the small intestine in three places, and sew it back, to remove the sponge. The Plaintiff testified that she now has bouts of constipation or diarrhea, as well as abdominal pain, and this has affected her ability to travel and enjoy life, and has affected her relationship with her husband. Plaintiff Darrell Savage testified that his relationship with his wife had suffered as a result of this injury, including her inability to travel as they once did, and including a decline in their sexual relationship.

Having considered all the evidence, the Court finds that the verdict is excessive, and appears to be the result of passion and prejudice on the part of the jury.... In the interest of judicial economy, the Court declines to order a new trial in this case, which would be a third trial.... If the appellate court believe[s] the damages are excessive, then the

Court and counsel will have a framework with which to try the case again.

Under CR 59.01(d),[6] a trial court's decision to grant or deny a motion for a new trial based upon an allegedly excessive verdict lies within the discretion of the trial court. *Childers Oil Co., Inc. v. Adkins,* 256 S.W.3d 19, 28 (Ky.2008); *see also Davis v. Graviss,* 672 S.W.2d 928, 932 (Ky.1984) ("This is a discretionary function assigned to the trial judge who has heard the witnesses firsthand and viewed their demeanor and who has observed the jury throughout the trial.").[7] However, our usual standard of review must be undertaken with an additional consideration:

> The amount of damages is a dispute left to the sound discretion of the jury, and its determination should not be set aside merely because we would have reached a different conclusion. If the verdict bears any relationship to the evidence of loss suffered, it is the duty of the trial court and this Court not to disturb the jury's assessment of damages.

*Childers Oil Co., Inc.,* 256 S.W.3d at 28 (*quoting Hazelwood v. Beauchamp,* 766 S.W.2d 439, 440 (Ky.App.1989)). "That is to say, we necessarily approach such questions with great caution." *Emberton v. GMRI, Inc.,* 299 S.W.3d 565, 579 (Ky. 2009).

Three Rivers contends that the trial court has duly exercised its discretion by its findings that the jury verdict was excessive and was a result of passion and prejudice. However, upon close examination, it is clear that the trial court's ulti-mate conclusion in that respect is at odds with its underlying findings of fact that describe a dreadful ordeal endured by Appellees, including a serious and ongoing deterioration in Sophia's quality of life, including an inability to travel, and a substantial breakdown in their physical relationship.

The testimony of the surgeon who removed the sponge further demonstrates a terrible medical ordeal Sophia suffered as a result of the retained sponge. The surgeon described the tribulation in more detail as follows: (1) the surgery required that he "remove three pieces of small bowel and then [reconnect] those three sections"; (2) because of the sponge Sophia has "[a]n inflammatory mass ... a lot of swelling, inflammation, very, just swollen tissue"; (3) the sponge "was practically eroding the bowel at three different spots [so] we had to remove portions of the bowel with it, because it was ... just tearing holes in the bowel it was stuck to"; and (4) "because there was so much scar tissue, the bowel itself couldn't be straightened out or separated, so it was just all kind of scarred in just a real twisted mass." In all, some eighteen inches of intestine were removed during the surgery.

Dr. Jeremy Klein, Sophia's primary care physician, testified that after the removal of the sponge that Sophia's general appearance declined to one of chronic illness and frailty. Dr. Klein concluded that the sponge removal surgery and loss of much of her intestine took a significant toll on Sophia.

---

6. CR 59.01(d) provides that "A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes: ... (d) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court."

7. *Davis* was overruled on other grounds by *Sand Hill Energy, Inc. v. Ford Motor Co.,* 83 S.W.3d 483, 493–95 (Ky.2002). *Sand Hill* was subsequently vacated by *Ford Motor Co. v. Estate of Smith,* 538 U.S. 1028, 123 S.Ct. 2072, 155 L.Ed.2d 1056 (2003).

And finally, Sophia's own account of her pain and suffering as a result of the retained sponge included serious diarrhea and constipation for an extended time following the surgery, "very painful" symptoms, and the feeling that something in her body is "tearing apart." She further testified that because of this injury to her health she is anxious and depressed, she is unable to travel, she is unable to visit her grandchildren, and she is unable to enjoy the relationship with her husband that she had prior to the events. Obviously, as a reciprocal of all that has been described, Darrell has suffered a corresponding decline in his quality of life as a result of his loss of Sophia's companionship.

■ It is fundamental that a plaintiff is entitled to recover for all of her pain and suffering caused by a defendant; that is, that both physical and mental suffering merit recovery. *See Warfield Natural Gas Co. v. Wright*, 246 Ky. 208, 54 S.W.2d 666 (1932); *McVey v. Berman*, 836 S.W.2d 445, 449 (Ky.App.1992). "On such an issue as this, where the extent of pain being suffered is not capable of objective valuation, there really is no satisfactory standard by which to measure an award of damages." *McClain v. Star Cab Co.*, 346 S.W.2d 539, 540 (Ky.1961). Further, it is inherent within our jury system that juries may vary in their assessment of a proper award. With these factors in mind, in our view, the amount does not appear to be out of line with many such plaintiff's verdicts for this type of devastating injury. *See, e.g., NKC Hospitals, Inc. v. Anthony*, 849 S.W.2d 564 (Ky.App.1993) (An award of $1,625,000 for twenty days of pain and suffering prior to the decedent's death, caused by negligent failure to diagnose a ruptured appendix, is not excessive so as to require a new trial where the decedent was conscious and in severe pain during the twenty-day period, swollen beyond recognition, unable to verbally communicate, and with tubes exiting almost every orifice of her body).

"The trial court, when confronted with a motion for a new trial under CR 59.01(d) on excessive damages, must evaluate the award mirrored against the facts. It is said, if the trial judge does not blush, the award is not excessive. On the level before us, we only determine whether the trial court erred. No question, the award was monumental but so was the injury." *NKC Hospitals, Inc.*, 849 S.W.2d at 569–570. Clearly, the relationship between the award and the injury in this case is not "bizarre." *Id.* The factual basis supporting the award convinces us that the award in this case was not excessive under our standards for evaluating excessiveness. To the extent the trial court purported to reach this conclusion, we believe it was an abuse of discretion in light of the circumstances presented by the evidence. Despite that conclusion, the trial judge, declined to set aside the verdict. We affirm that decision, and thereby we affirm the damages verdict returned by the jury in the second trial.

### IV. CONCLUSION

For the reasons set forth above, the opinion of the Court of Appeals is reversed and the judgment of the Lawrence Circuit Court is hereby reinstated.

MINTON, C.J., CUNNINGHAM, NOBLE and SCOTT, JJ., concur.
ABRAMSON, J., concurs in result only.
SCHRODER, J., not sitting.