Beverly **SIMONS,** as Administratrix of the Estate of William (Marty) Simons, and Beverly Simons, Individually, Plaintiffs,

and

Liberty Mutual Insurance Company, Intervenor Plaintiff,

v.

Johnny L. **STRONG,** and City of Hazard, Kentucky, Defendants, Intervenor Defendants, and Third–Party Plaintiffs,

v.

Lafferty Enterprises, Inc. d/b/a Trans–Star Ambulance Service, Cecil Murray, Jr., John Doe 1, and John Doe 2, Third–Party Defendants.

Civil No. 11–187–GFVT.

United States District Court,
E.D. Kentucky,
Southern Division,
London.

Oct. 18, 2013.

Andrew J. Horne, Anderson & Horne, PLLC, Louisville, KY, Matthew Joseph Schad, Schad & Palmer, PC, New Albany, IN, for Plaintiff.

Michael J. Schmitt, Jonathan C. Shaw, Porter, Schmitt, Banks & Baldwin, Paintsville, KY, Andrew J. Horne, Anderson & Horne, PLLC, Louisville, KY, Jonathan P. Collins, Paul R. Collins, Hollon & Collins, Hazard, KY, R. Craig Reinhardt, Jonathan D. Gray, Reinhardt & Associates PLLC, Lexington, KY, for Defendant.

Jeffrey E. Hiatt, Barber, Banaszynski & Glidewell, P.S.C., Louisville, KY, for Intervenor Plaintiff.

Jonathan C. Shaw, Michael J. Schmitt, Jonathan C. Shaw, Porter, Schmitt, Banks & Baldwin, Paintsville, KY, Jonathan P. Collins, Paul R. Collins, Hollon & Collins, Hazard, KY, Andrew J. Horne, Anderson & Horne, PLLC, Louisville, KY, for Third–Party Plaintiffs.

R. Craig Reinhardt, Jonathan D. Gray, Reinhardt & Associates PLLC, Lexington, KY, for Third–Party Defendants.

## ORDER

GREGORY F. VAN TATENHOVE, District Judge.

On the morning of July 12, 2010, a dump truck owned by the City of Hazard, Kentucky ("Hazard"), and driven by Johnny Strong, collided with a pickup truck driven by William "Marty" Simons, resulting in Simons' death. [R. 69 at 1–2.] Simons' widow, Beverly Simons, brought suit against Strong and the City of Hazard, and during the discovery process found that a Trans–Star ambulance driven by Cecil Murray, Jr. had traveled on the same road that morning. Ms. Simons then added Murray and Lafferty Enterprises, d/b/a Trans–Star Ambulance Service ("Trans–Star"), as third party defendants for purposes of apportionment. This matter is before the Court on a Motion for Summary Judgment, brought by Third Party Defendants Trans–Star Ambulance and Cecil Murray, Jr. [R. 69.] Because the Court finds there is a genuine issue of material fact, the motion for summary judgment is DENIED.

## I

On the day of the accident, Mr. Strong was driving a dump truck down the westbound lane of the Hal Rogers Parkway when an ambulance approached him from behind and turned on its emergency lights and sirens. [R. 69 at 1–2 (citing Strong Depo. at 27, 79) ]. Strong testified that in order to allow the ambulance to pass him, he slowed down and pulled his truck over to the right shoulder but did not come to a complete stop. After the ambulance passed, Strong pulled back onto the Parkway, which was one lane in each direction at that point, and continued traveling in the westbound lane. [*Id.* at 2 (citing Strong Depo. at 5) ]. According to Strong, he saw two vehicles pulled over onto the shoulder of the westbound lane, and as he approached them, one vehicle suddenly drove into the westbound lane of traffic in which Strong was traveling. [*Id.* (citing Strong Depo. at 87, 91, 104) ]. To avoid hitting the vehicle, Strong swerved to his left, crossing the opposing lane of traffic all the way onto the eastbound shoulder. [*Id.* (citing Strong Depo. at 113) ]. In doing so, Strong's truck collided with Mr. Simons' vehicle which was traveling in the opposite direction of Strong in the eastbound lane. [*Id.* (citing Strong Depo. at 125) ]. There is some dispute as to exactly where and how they collided, but it is undisputed that Strong's truck and Simons' vehicle collided and skidded across the shoulder south of the Parkway before stopping in a gully, and that Mr. Simons died as a result of his injuries sustained in the collision. [R. 69 at 2.] The two vehicles Strong saw by the side of the road remain unidentified, and their drivers have not been located.

During the discovery process, Strong and the City of Hazard found that the ambulance that had passed Strong was driven by Cecil Murray, Jr., and had transported a patient that morning from Leslie County to Lexington for a doctor's appointment. [*Id.* at 3 (citing Murray Depo. at 5, 12–13) ]. Murray is employed

by Lafferty Enterprises, which does business as Trans–Star Ambulance Service. The ambulance technician, Deborah Hensley, testified that Murray's trip to Lexington was not an emergency run. [R. 76 at 2 (citing Hensley Depo. at 8–10)]. Murray testified that he used the emergency lights and siren during the trip because the patient was in pain and he wanted to shorten the trip. [R. 69 at 3 (citing Murray Depo. at 12–13)]. Strong and the City of Hazard, however, alleged that Murray ultimately caused the accident by misusing the emergency lights and siren, and added Murray and Trans–Star Ambulance as third party defendants for purposes of apportionment. [R. 69 at 3.] Mrs. Simons also added Murray and Trans–Star ambulance as defendants, alleging general negligence.

The parties have retained three accident reconstructionists to provide expert testimony. Plaintiffs retained Sonny Cease as their expert, and the Defendants retained Rick Franklin and Joseph Stidham. In their depositions, these experts have provided various opinion as to the cause of the accident, the distances between all the vehicles involved and the amount of fault shared by the drivers involved. An apparent eyewitness named John Compkis [1] testified that the two unidentified vehicles were unusually close together when they were pulled off onto the shoulder. [R. 69 at 4 (citing Compkis Depo. at 27)]. Apparently,[2] Compkis also testified that at some point the ambulance passed him without the emergency lights on. [R. 76 at 3 (quoting Stidham Depo. at 16)]. Based on Compkis' deposition testimony, Stidham

concluded that the ambulance was speeding without its emergency lights on when it passed Compkis. [*Id.* (quoting Stidham Depo. at 16)]. Franklin used Compkis' testimony to conclude that the ambulance was at least 400–600 feet beyond where the collision occurred when the first unidentified vehicle pulled onto the Parkway in front of Strong. [R. 69 at 4 (citing Franklin Depo. at 149–50)].

Based on the conclusions of the three experts, and based on Compkis' testimony, Strong and Hazard, along with Mrs. Simons, argue that Murray's actions while driving the ambulance constituted negligence per se because he was misusing the emergency lights and speeding in the absence of an emergency. [R. 76 at 3–5]. They contend that Murray's actions were the ultimate cause of the accident because if not for the ambulance speeding down the road with its emergency lights and siren, the unidentified vehicle would not have pulled back onto the road in front of Strong, and Strong would not have swerved into Simons' truck. Trans–Star Ambulance and Murray, however, argue that the ambulance was not the legal cause of the accident because the negligent actions of both Strong and the unidentified vehicles were superseding causes of the accident. [R. 69 at 4.] Therefore, Trans–Star Ambulance and Murray have moved for summary judgment, alleging that since it is undisputed that Strong acted negligently by not stopping his vehicle when the ambulance came by, and since the unidentified vehicle negligently pulled out in front of Strong, both Strong and the unidentified vehicle engaged in negligent

---

1. None of the parties' briefs explain exactly who John Compkis is or how much he saw of the events surrounding the accident.

2. Most of Compkis' testimony as presented in the parties' briefs is relayed second-hand by way of quotations from Stidham's deposition

or Franklin's deposition discussing Compkis' testimony. The parties would have been better served by directly quoting from or referencing Compkis' deposition testimony instead of relying on experts' opinions about his testimony.

behavior that caused the accident apart from any actions of the ambulance driver. [R. 64 at 4–6.]

## II

### A

Summary judgment is appropriate when "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F.Supp.2d 577, 582 (E.D.Ky.2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*

*Corp.*, 477 U.S. at 324, 106 S.Ct. 2548). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir.2001) (citing *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505).

This action is in federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Because Kentucky is the forum state, its substantive law will be used. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir.2006) (citations omitted). However, federal procedural law will govern as applicable, including in establishing the appropriate summary judgment standard. *Weaver v. Caldwell Tanks, Inc.*, 190 Fed.Appx. 404, 408 (6th Cir.2006).

To prevail on a negligence claim under Kentucky law, the plaintiff must prove that the defendant 1) owed the plaintiff a duty of care, 2) the defendant breached the standard of care by which his or her duty is measured, and 3) that the breach was the legal causation of the consequent injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky.2003); *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky.2012). The element of duty is a question of law for the court to decide, breach and injury are questions of fact for the jury to decide, and causation is a mixed question of law and fact. *Pathways, Inc.*, 113 S.W.3d at 89 (citing *Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky.1980)). To prevail on its motion for summary judgment, therefore, Trans–Star Ambulance and Murray must establish that there is a complete "absence of evidence," *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548, that Murray owed a duty to the drivers on the Parkway, that he breached that duty, and that his breach was a substantial cause of the accident. If, however,

there is any genuine dispute as to any material fact concerning the elements of duty, breach, and causation, such that a reasonable jury could find that Murray was negligent, the Court cannot grant summary judgment to the movants. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

**B**

■ In determining whether the defendant owed a duty of care, Kentucky courts generally adhere to the "universal duty of care" standard which is a general obligation "to exercise ordinary care to prevent foreseeable harm." *James v. Meow Media, Inc.,* 300 F.3d 683, 691 (6th Cir. 2002). A foreseeability analysis can often become confused with proximate cause, but generally the court must determine whether the harm suffered could have been anticipated by the defendant, which necessarily encompasses the probability of the harm at issue. *James,* 300 F.3d at 691–92; *Matilla v. South Kentucky Rural Elec. Coop. Corp.,* 2006 WL 485069, at *3 (E.D.Ky. Feb. 28, 2006). Here, Murray clearly owed a duty of reasonable care to the other drivers on the road, even while driving an ambulance. *See* KRS § 189.940(7) (stating that drivers of emergency vehicles still retain the duty to operate the vehicle "with due regard for the safety of all persons and property" on the roads). In this case, however, the element of duty is further complicated by the third-party plaintiffs' allegations that Murray violated certain statutes in the way he operated the ambulance. These allegations, though not clearly stated as such by the parties, amount to a claim of negligence per se.

■ For a common-law negligence claim, the standard of care is that of the ordinary care that "a reasonably prudent person would exercise under the circumstances." *Wright,* 381 S.W.3d at 213 (quoting *Slusher v. Brown,* 323 S.W.2d 870, 872 (Ky.1959)). Negligence per se is a negligence claim that substitutes a statutory standard of care for the common law standard of care. *Pile v. City of Brandenburg,* 215 S.W.3d 36, 41 (Ky.2006). Under Kentucky law, "a person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation. . . ." KRS § 446.070. Additionally, to sustain a claim for negligence per se, the plaintiff must be a member of the class of persons the statute was designed to protect, and the plaintiff's injury must be the type of injury the statute was designed to prevent. *Griffith v. Kuester,* 780 F.Supp.2d 536, 546–47 (E.D.Ky.2011) (quoting *Carman v. Dunaway Timber Co.,* 949 S.W.2d 569, 570 (Ky. 1997)). In the present case, the statute at issue which Murray allegedly violated pertains to certain exemptions from traffic regulations which apply to emergency vehicles such as ambulances.[3] *See* KRS 189.940. Such traffic regulations are clearly designed to protect other people using the roads, which in this case would include Mr. Simons and Mr. Strong, as well as all other drivers involved; and the injuries which traffic regulations are designed to prevent are presumably injuries from accidents such as the one in this case.

---

**3.** Third party plaintiffs Strong and Hazard reference several statutes which they allege Murray violated while driving the ambulance, but they do not directly quote from those statutes or engage in any detailed analysis of how they apply to the facts of this case. [*See* R. 76 at 4–5]. The Plaintiffs' brief also fails to engage in useful analysis of the alleged statutory violations. [R. 77 at 3.] The Court notes that Murray and Trans–Star's reply brief is no better in clarifying the relevant statutes at issue, but merely counters that Strong also violated certain statutes by failing to stop when the ambulance passed him. [R. 79 at 5.]

Thus, if Murray violated applicable traffic regulations in how he drove the ambulance, the statutory violation would satisfy the duty and breach elements of a negligence per se claim.

Because of the multiple statutes the parties reference without specific citations or clear analysis, the first issue to resolve in this case is to clarify what Murray's statutory duty was. In particular, Ms. Simons, Strong, and the City of Hazard repeatedly allege that Murray violated certain speeding statutes. However, KRS § 189.940 specifically states that statutory speed limitations do not apply to emergency vehicles when such vehicles are:

a) responding to emergency calls; *or*

b) To police vehicles when in pursuit of an actual or suspected violator of the law; *or*

c) To ambulances when transporting a patient to medical care facilities; *and*

d) The driver thereof is giving the warning required by subsection (5)(a) and (b) of this section.

No portion of this subsection shall be construed to relieve the driver of the duty to operate the vehicle with due regard for the safety of all persons using the street or highway.

Ky.Rev.Stat. Ann. § 189.940(1) (West) (emphasis added). The parties appear to have overlooked the small but significant words such as "or" and "and" since they exchange extensive arguments concerning the fact that Murray was not responding to an emergency situation. Because subsection (1)(a) contains the word "or," and because the parties do not dispute that Murray was transporting a patient to medical care facilities as listed in subsection (1)(c), it is clear that Murray was exempted from the statutory limitations on speed as long as he complied with the condition listed in subsection (1)(d). That subsection directs the reader to subsection (5)(a) and (b) which states as follows:

The driver of an emergency vehicle desiring the use of any option granted by subsections (1) through (3) of this section shall give warning in the following manner:

(a) By illuminating the vehicle's warning lights continuously during the period of the emergency; and

(b) By continuous sounding of the vehicle's siren, bell, or exhaust whistle; . . .

Ky.Rev.Stat. Ann. § 189.940(5)(a)-(b).

Thus, according to the statute, because Murray was operating an ambulance while transporting a patient to a medical care facility pursuant to § 189.940(1)(c), he was exempt from statutory requirements to adhere to the speed limit as long as he was continuously using the ambulance's warning lights and sirens pursuant to § 189.940(5)(a)-(b). The parties do not dispute that Murray was transporting a patient to a medical care facility, and they have not cited to any other statute that defines "emergency" in a more specific way such that § 189.940(1)(c) would not apply to the task Murray was performing. Therefore, in applying this statute to the facts as presented by the parties, the Court finds that Murray owed a statutory duty of care to all other drivers on the road to abide by the speed limit *unless* he continuously illuminated the ambulance's warning lights and continuously sounded the ambulance's siren during the entire time that he was transporting a patient to a medical facility.

### C

Having found that Murray owed a statutory duty, the Court must turn next to the question of whether Murray breached that duty. The issue of breach is generally a question of fact for a jury. *Pathways,* 113

S.W.3d at 89. If the facts necessary to establish breach are in dispute, the Court cannot grant summary judgment. Ms. Simons, Strong, and the City of Hazard allege that Murray was violating statutory speed limitations while driving the ambulance. They also allege that Murray's use of the ambulance lights and sirens was not continuous, which, if true, would constitute a violation of the statutes discussed above if he were also speeding. The Movants' reply brief generally asserts "there was no statutory violation on their part." [R. 79 at 2]. Although the Movants do not present specific evidence to counter these allegations, they do seek to discredit the expert testimony upon which the allegations are based.

First, the speed of the ambulance at the time of the accident is a material fact which is in dispute. The only apparent basis for the speeding allegation presented to the Court is the testimony of Mr. Stidham and of Mr. Franklin, the experts retained by the Plaintiff. Stidham stated that the ambulance was "exceeding the posted speed limit without his emergency lights on," and when questioned further, his only basis for this assumption was apparently the fact that Mr. Compkis had said he "was traveling 58 to 60 miles an hour when the ambulance passed him." [R. 75, (quoting Stidham Depo. at 16.)] In contrast, Mr. Strong testified that he was going between fifty and fifty-two miles an hour when the ambulance passed him. [R. 70 at 79.] Mr. Franklin also assumed that the ambulance was speeding, but the Movants have pointed out that Franklin later admitted in his deposition that his basis for estimating the ambulance's speed was far from certain. [R. 79 at 4 (quoting R. 74, Franklin Depo. at 111)]. In particular, he had assumed the ambulance's speed based on an overall average for the entire trip and on Mr. Strong's statement that the ambulance "blew by him." Mr. Strong's

description is particularly subjective since he also said that he slowed down and pulled over, which could make it seem the ambulance was traveling even faster as it passed. Conflicts in testimony in negligence cases are questions that should be resolved by the jury. *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 385 (Ky.1985). Because these vague and conflicting statements are the only evidence presented to support the speeding allegations, and because they are admittedly based on assumptions involving credibility determinations, the question of whether Murray was speeding is better left to the jury.

As explained above, even if Murray had been speeding at the time of the accident, it was not a per se violation of KRS § 189.940 as long as he was continuously operating the emergency lights and sirens. The parties have presented conflicting testimony on this issue as well. For instance, Mr. Stidham's testimony states that the ambulance driver was "turning on his lights shall we say sporadically when he got into traffic to travel around vehicles." [R. 76 at 3 (quoting Stidham Depo. at 15)]. However, the parties do not explain the basis for how Mr. Stidham knew this. Strong and Hazard's response brief also cites Mr. Franklin's testimony that stated "the ambulance turned on its lights for no reason and passed the truck," but none of the parties explain the basis for that statement either. One witness, Compkis, testified that the ambulance's lights were not on when it passed him [R. 76 at 3 (quoting Stidham Depo. at 16)]; but Mr. Strong testified that the lights were on when it came up behind him, although he did not specify whether they were emergency lights or how they were used, and he said that he did not hear a siren. [R. 70 at 76–77, 80]. None of the parties have explained the relevance of Compkis' testimo-

ny, how close he was to the accident, or at what point in time the ambulance passed him relative to when it passed Mr. Strong. Since Strong was actually involved in the accident, it would appear that the ambulance's speed and manner of driving when it passed Strong is more relevant to this case than when it passed Compkis. Thus, the Court finds that the parties have not sufficiently demonstrated whether or not Murray's use of the lights and siren was continuous, or even whether they were used at all.

Whether Murray breached his statutory duty of care depends on 1) whether he was speeding, and, 2) if so, whether he was operating the emergency lights and sirens continuously while speeding. Both of these facts are in dispute, as evidenced by the conflicting testimony on these issues. Based on a review of the record, the Court finds that a genuine issue of material fact exists as to whether Murray was speeding at the time of the incident, and as to Murray's operation of the ambulance's emergency lights and sirens. Accordingly, the Court finds that the issue of whether Murray breached his statutory duty of care "presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

**D**

■ Even if it can be established that Murray violated a statutory duty of care, to prove liability, the plaintiffs must still prove that his violation was a substantial factor in causing the accident. *Griffith*, 780 F.Supp.2d at 547; *Peak v. Barlow Homes, Inc.*, 765 S.W.2d 577, 578 (Ky.App. 1988). In determining causation, Kentucky courts generally follow the Restatement of Torts, Second. *See, e.g. NKC Hospitals, Inc.*, 849 S.W.2d at 568; *Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky.1980). Under the Restatement, the plaintiff must first show that the defendant's actions were a substantial factor in causing the plaintiff's harm by having an "appreciable effect" in bringing about the injury at issue. Restatement of Torts, Second § 433. Even then, the intervening actions of a third party could potentially relieve the defendant of liability if those actions amount to the level of a superseding cause. *NKC Hospitals, Inc. v. Anthony*, 849 S.W.2d 564 (Ky.App.1993); *Deutsch v. Shein*, 597 S.W.2d at 144.

Here, the Movants argue that even if Murray breached his duty of care, both Strong and the drivers of the unidentified vehicles also violated various statutes, and their own negligent conduct were superseding causes of Simons' death that relieve Murray and Trans–Star from liability. [R. 69 at 5–10]. They contend that but for the unlawful conduct of Strong in failing to stop his vehicle and in following the ambulance too closely, and if not for the unidentified vehicles pulling out in front of a truck, this accident would not have happened. [*Id.*] Thus, the Movants maintain that this accident was not a foreseeable consequence of Murray's allegedly negligent use of the emergency lights, and that the superseding causes. *See NKC Hospitals, Inc.*, 849 S.W.2d at 567–68.

In *NKC Hospitals*, the court laid out six attributes which an intervening action by a third party must have in order to rise to the level of a superseding cause. *NKC Hospitals, Inc.*, 849 S.W.2d at 568. However, in order to analyze Strong's actions and the unidentified driver's actions according to the six-part test in *NKC Hospitals*, it is first necessary to establish what exactly those actions were. The record does not contain any testimony from anyone who saw the accident take place except for Strong, who was involved in the accident himself and is hardly an unbiased observer. Mr. Compkis apparently saw

the ambulance pass him, but cannot give an authoritative description of the other events leading up to this accident. The experts retained by the parties give conflicting opinions as to causation and even as to the facts of what actually happened. [*See* R. 76 at 2–4]. The basic facts of what actually happened, therefore, are clearly in dispute and need to be resolved before any determination about superseding causes can be made.

### III

In conclusion, the Court finds that under the facts presented, there is a genuine issue of material fact concerning each of the elements of negligence. How and whether Murray may have breached his duty to other drivers on the road by speeding, or by using his lights and siren intermittently rather than continuously, are facts which are disputed by the parties. Likewise, whether Murray's alleged breach of the statute was the legal cause of the accident also requires a determination of facts which are still in dispute at this time. Given the conflicting testimony in the experts' depositions, the lack of any testimony on the part of the unidentified drivers, and the lack of other eyewitness testimony apart from Mr. Compkis, the Court would have to weigh incomplete and conflicting testimony and engage in credibility determinations, all of which should properly be submitted to a jury. *Horton,* 690 S.W.2d at 385.

Accordingly, for the reasons stated above and the Court being sufficiently advised, it is hereby **ORDERED** that the Third Party Defendants Trans–Star Ambulance and Cecil Murray, Jr.'s Motion for Summary Judgment is **DENIED.**