RENDERED: SEPTEMBER 9, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1085-MR

JEREMY BOTTOMS                                                  APPELLANT

v.

APPEAL FROM NELSON CIRCUIT COURT
HONORABLE JOE G. BALLARD, JUDGE
ACTION NO. 19-CI-00324

CHARLES SMITH AND
DALTON RONALD SMITH, BY AND
THROUGH HIS PARENT AND
GUARDIAN, DIANE MARY SMITH                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CETRULO, AND L. THOMPSON, JUDGES.

CETRULO, JUDGE: This is an appeal from a summary judgment of the Nelson

Circuit Court in favor of the owner of a vehicle that was taken by an unlicensed,

underage driver, resulting in an accident that caused injuries. After careful

consideration, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On July 13, 2018, Dalton Smith ("Dalton"), a 15-year-old, was visiting the farm of his grandfather, Charles Smith ("Charles"). Charles owned a Chevy Silverado truck and was on another part of the property, taking a nap, when Dalton took the keys to that truck, without permission of Charles. Dalton was driving the truck later that evening when he struck a pedestrian, Jeremy Bottoms ("Bottoms"), causing injuries. Dalton fled the scene but was later apprehended.

Bottoms filed suit against Dalton, by and through Dalton's mother, Diane Mary Smith ("Diane"), and against Charles, as owner of the vehicle. He alleged that Charles failed to properly train and/or supervise his grandson; and that he negligently entrusted the vehicle to Dalton. The depositions of Bottoms, Dalton, Diane, and Charles were all taken, and written discovery was exchanged.

Charles moved for summary judgment asserting that he could not be held liable under Kentucky law due to the lack of permission, because the grandson's act was unforeseeable, and because he had no duty to supervise or train his grandson. Bottoms argued that Charles could be held jointly and severally liable for damages pursuant to KRS[1] 186.590(3) because he knowingly permitted Dalton to use the vehicle or "gave or furnished" the vehicle to him, by failing to supervise. He also failed to contact the authorities immediately upon learning the

---

[1] Kentucky Revised Statute.

vehicle was missing. Bottoms further argued the theory of negligent entrustment applied and that there was evidence of "implied" permission by Charles.

The Nelson Circuit Court found that KRS 186.590(3) did not apply and further declined to find that Charles violated any duty to supervise or train his grandson, Dalton. The court also reviewed the argument of negligent entrustment and concluded that there was insufficient evidence to support such a claim against the grandfather in this case, and found no case law in Kentucky supporting a claim of negligent entrustment on a theory of "implied" permission. Based upon its review of the motions, depositions, and discovery in the case below, the court below granted summary judgment in favor of Charles.[2] This appeal followed.

**STANDARD OF REVIEW**

The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary

---

[2] Dalton remains as a defendant in this matter. However, by the express provisions of CR 54.02, a trial court may grant a final judgment on less than all the claims when more than one claim for relief is presented in an action by including the finality language in its order, which this court did. *Watson v. Best Fin. Servs., Inc.*, 245 S.W.3d 722 (Ky. 2008).

judgment to present at least some affirmative evidence showing a genuine issue of material fact for trial. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991) (citations omitted). "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004) (citations omitted).

## ANALYSIS

Appellant's first argument is that the trial court erred in finding that KRS 186.590(3) did not apply to these facts. That statute provides:

> Every motor vehicle owner who causes or <u>knowingly permits</u> a minor under the age of eighteen (18) to drive the vehicle upon a highway, and any person who gives or furnishes a motor vehicle to the minor shall be jointly and severally liable with the minor for damage caused by the negligence of the minor in driving the vehicle.

(Emphasis added.)

The Nelson Circuit Court concluded that this statute did not apply as there was no evidence of permission by Charles. On appeal, Bottoms asserts that the court below narrowly construed the word "permits" and should have more liberally construed this statute to provide a source of recovery to anyone who is injured by a minor.

We agree that case law under this statute suggests that its purpose was to provide an additional source of recovery of damages when a minor driver is

-4-

found responsible for them. *Sizemore v. Bailey's Adm'r*, 293 S.W.2d 165, 168 (Ky. 1956). In *Sizemore*, the Court held that it was clear that this was the intent of the legislature, but further noted that KRS 186.590 is in derogation of an established rule of law and therefore must be construed rigidly according to its plain meaning. *Id*. "By making the person liable who enables a minor to operate a motor vehicle, an additional source for the recovery of damages is provided." *Peters v. Frey*, 429 S.W.2d 847, 849 (Ky. 1968) (citing *Sizemore*, 293 S.W.2d at 169). We recognize that the minor is unlikely to have funds to compensate the injured party.

However, in reviewing the cases analyzing this statute, as the trial court also did, it is apparent that the plain meaning of the statute does require "permission" and that no liability attaches to an owner of a vehicle unless it is first established that the vehicle was operated *with permission*. *Commonwealth Fire & Casualty Ins. Co. v. Manis*, 549 S.W.2d 303, 305 (Ky. App. 1977). Under the plain language of KRS 186.590(3), Charles would only be liable for Dalton's negligence if three elements are met: (1) he is the owner of the motor vehicle involved in the accident; (2) he caused or knowingly permitted Dalton to drive the vehicle; and (3) Dalton is a minor under the age of 18. *See also State Auto. Ins. Co. v. Reynolds*, 32 S.W.3d 508, 510 (Ky. App. 2000). While the first and third elements were present, the evidence simply did not establish that Charles "caused

or knowingly permitted" Dalton to drive the vehicle. Appellant presented a compelling argument that Charles "knowingly permitted" Dalton to use the vehicle by not immediately notifying the authorities upon discovery of his missing truck. The time period that lapsed may have been as much as a few hours.

However, we simply cannot read the language of the statute that broadly, nor impose a brightline "reasonable time to notify" upon one whose vehicle is taken without permission or knowledge. In *Cook v. Hall*, 308 Ky. 500, 214 S.W.2d 1017 (1948), Kentucky's highest Court held that the negligence of a 15-year-old boy could not be imputed to his father where there was no evidence that the father had knowledge of or had caused his son to use the vehicle. Here, Charles neither caused nor knowingly permitted Dalton to possess those keys. The evidence was undisputed that Dalton took the keys out of his grandfather's pants while he was napping. We must agree with the trial court that KRS 186.590(3) simply cannot be applied to impute joint and several liability upon Charles.

Secondly, Bottoms argues that the trial court erred in granting summary judgment on the negligent supervision claim. Bottoms asserts that Dalton had a history of making impulsive decisions and that Charles was on notice that his grandson required a higher degree of supervision because he referred to him as "a handful."

In contrast, Charles argued that *James v. Wilson*, 95 S.W.3d 875 (Ky. App. 2002), is dispositive of this issue and further supports the summary judgment granted below. *James* dealt with the alleged negligence of parents whose son initiated the tragic school shootings in 1997 in Paducah. *Id*. at 883. In that case, the court granted summary judgment to the parents as there was nothing known on or before the date of that event to indicate a need to protect or prevent that minor from shooting classmates at his school. *Id*. at 887. The appellants herein similarly have produced no evidence that Charles knew on or before this date that Dalton would take his keys without permission and drive his vehicle on public roads. It is asserted that Dalton had taken his grandfather's truck a week earlier, on a joyride to town; however, having reviewed the depositions and entire record, and upon further questioning of the attorneys at oral arguments, there was no evidence offered that Charles knew of any alleged use of his vehicle by Dalton prior to this evening. The trial court addressed this as well, noting that Dalton stated he did not get caught on the week prior joyride and he only admitted this to his mother after the incident in question.

Additionally, we are guided by *Hugenberg v. West American Insurance Company/Ohio Casualty Group*, 249 S.W.3d 174 (Ky. App. 2006). In *Hugenberg*, an underage, unlicensed child took a friend's car and wrecked it, causing serious injuries to a passenger. The *Hugenberg* Court stated, "[p]arents

owe no duty to third parties to supervise or control their minor child to prevent the child from harming others unless the parents know, or should know, of the need and opportunity to exercise such control . . . ." *Hugenberg*, 249 S.W.3d at 185. The *Hugenberg* Court determined that there was a question of fact as to whether the owner of that vehicle may have given an underage driver implied or even actual permission to operate the vehicle. *Id*. at 195. Further in *Hugenberg*, the evidence suggested that the owner <u>had</u> permitted the driver to operate his vehicle before and may have even given him the keys on the night in question. *Id*. Thus this Court found summary judgment in favor of that owner was premature.

In contrast, here there was no evidence that Charles ever "permitted" Dalton to operate his vehicle on a public road, nor that he had any knowledge of any prior such use until after this event. Even Bottoms recognizes that *Hugenberg* placed no duty on a parent to regulate a child's behavior on an ongoing basis, unless they knew or should know of a specific need to prevent their child from committing an injurious act. *Id.* at 184.

Similarly, as part of Bottoms' argument that the court erred in granting summary judgment on the negligent supervision claim, he asserts 1) that Charles had "custody and control" of Dalton, even though he was a grandfather, not a parent, and, 2) that Dalton's behavior was "foreseeable." First, we have reviewed the testimony of all witnesses and agree with the trial court that there is

-8-

simply not sufficient evidence to imply or suggest any custody or control by Charles in this case. Dalton did not have a closet, a chest, a room, or even a bed at his grandparents' home. He did not keep clothing there and generally only stayed a night or two a week. All the testimony confirmed there was no "custody or control" with the grandparents. Bottoms cites to no authority in Kentucky that would extend the negligent supervision claim to a non-custodial grandparent.

Second, Bottoms again asserts that Dalton's actions were foreseeable, inasmuch as Charles did not prevent harm to others by reporting his vehicle's absence after he awoke. However, the trial court was unpersuaded.

> After consideration of the facts and the existing case law, the court finds Dalton's theft of the keys and subsequent joyride was not foreseeable. Charles has testified Dalton had never previously driven his vehicle to his knowledge. While the fact that Dalton had had behavioral issues in the past might make an adult think he might have more such problems, those issues would not lead one to expect him specifically to steal a vehicle.

The trial court relied upon *Bruck v. Thompson*, 131 S.W.3d 764 (Ky. App. 2004), where the original act was the owner leaving his keys in a vehicle that resulted in a subsequent act of a thief stealing the vehicle and negligently driving it. The trial court analyzed *Bruck* and other cases to conclude that Dalton's theft of the keys and subsequent negligent driving was not foreseeable to Charles. We agree. As in *Bruck*, Dalton's theft of the vehicle and negligent driving constituted an "independent force," which was the superseding cause of Bottoms' injuries. *Id*.

at 767.  This independent force – Dalton's actions – broke the chain of causation and relieves Charles from any liability, if any existed.  *Id*. at 767-68.  *See also NKC Hospitals, Inc. v. Anthony*, 849 S.W.2d 564 (Ky. App. 1993), and *Howard v. Spradlin*, 562 S.W.3d 281 (Ky. App. 2018).

## CONCLUSION

The Nelson Circuit Court correctly interpreted Kentucky law and properly concluded that there were no genuine issues as to any material fact and Charles was entitled to judgment as a matter of law.  Accordingly, we AFFIRM the summary judgment of the Nelson Circuit Court, as to Charles, and the matter is remanded to the trial court for further proceedings as to Dalton.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Michelle Buckley Sparks
Bardstown, Kentucky

BRIEF FOR APPELLEE CHARLES
SMITH:

Eric A. Hamilton
Elizabethtown, Kentucky